**Ernest S. LITTLE, Plaintiff–Appellant,**

**v.**

**CITY OF SEATTLE; John Doe; Jane Doe, Defendants,**

**and**

**David Paul, Defendant–Appellee.**

No. 87–4207.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1988.

Decided Dec. 20, 1988.

As Amended on Denial of Rehearing Feb. 2, 1989.

682

Bernice Funk, Seattle, Wash., for plaintiff-appellant.

Charles Pinnell, Asst. U.S. Atty., Seattle, Wash., for defendant-appellee.

Before NELSON, BOOCHEVER and BRUNETTI, Circuit Judges.

BOOCHEVER, Circuit Judge:

Ernest S. Little appeals the district court's grant of summary judgment dismissing his federal civil rights, *Bivens*, and state law claims against the individual defendant, David Paul. The district court found that Paul was entitled to absolute immunity for any state-law torts and for his testimony before the grand jury, and to qualified immunity for any constitutional violations. We affirm.

## FACTS

David Paul is the Special Agent in Charge of the Seattle Field Office—Investigations of the Office of the Inspector General, United States Department of Labor. He is responsible for all investigations conducted by personnel in the Seattle field office. The field office investigates complaints and reports of possible fraud, waste, and abuse in programs funded or administered by the Department of Labor. Paul reports the results of these investigations to civil and criminal authorities.

In this role, Paul investigated an alleged misappropriation of funds from Lisamber Youth Unlimited, a program funded under the Comprehensive Employment and Training Act (CETA). As a result of the investigation, Little, the volunteer supervisor of Lisamber's Rent–A–Kid program, was indicted. The alleged misappropriations occurred in two ways. First, there were irregularities with the program's CETA accounts. CETA funds were used to purchase cashier's checks which were then used to purchase inventory for a record shop run by the subjects of the investigation. Second, invoices were submitted, signed by Little, attesting that funds had been spent for wages and fringe benefits for employees of Rent–A–Kid. Paul discovered that many of the fringe benefits had not been paid even though Little sought reimbursement for them.

Paul reported the findings of his investigation to an Assistant United States Attorney who presented the findings to a grand jury. The grand jury returned an indictment of Little and others. Although the evidence obtained by Paul during his investigation was important at trial, other witnesses also provided corroboration for Paul's findings.

Little's trial resulted in a hung jury and the United States Attorney elected not to retry the case. In lieu of retrial, the Government agreed to accept a compromise whereby Little entered into a consent judgment under the False Claims Act to repay some of the misappropriated funds.

## DISCUSSION

1. STATE–LAW TORT CLAIMS

A grant of summary judgment is reviewed de novo. *Darring v. Kincheloe,*

783 F.2d 874, 876 (9th Cir.1986) (*citing Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983)). Viewing the evidence in the light most favorable to the nonmoving party, we must "determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

Little alleged that Paul committed the state-law torts of negligence, malicious prosecution, intentional infliction of emotional distress, defamation and invasion of privacy. Paul asserts his absolute immunity from a damage suit for state-law torts.

The doctrine of absolute immunity embraces two important conflicting considerations:

> on the one hand, the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government; and on the other, the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities.

*Barr v. Matteo,* 360 U.S. 564, 565, 79 S.Ct. 1335, 1336, 3 L.Ed.2d 1434 (1959). The privilege is recognized because it is:

> important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

*Id.* at 571, 79 S.Ct. at 1339.

The court in *Barr* established a two-part test for absolute immunity. The duties in question must involve the exercise of discretion and the conduct must come within the outer perimeter of these duties. *Id.* at 574–75, 79 S.Ct. at 1341.

The Supreme Court reaffirmed the *Barr* test in *Westfall v. Erwin,* —— U.S. ——, 108 S.Ct. 580, 583, 98 L.Ed.2d 619 (1988) which was decided after the district court's decision on Little's claims. Erwin sued the supervisors of the Anniston Army Depot for injuries he sustained when he inhaled improperly stored toxic soda ash. The court found that the supervisors would be absolutely immune from suit if their acts were "within the scope of their official duties *and* the conduct [was] discretionary in nature." *Id.* 108 S.Ct. at 584 (emphasis in original). In order to be within the scope of official duties, "[i]t is only necessary that the action bear some reasonable relation to and connection with the duties and responsibilities of the official." *Clifton v. Cox,* 549 F.2d 722, 726 (9th Cir.1977) (citations omitted).

In addition, "[b]efore granting official immunity, we must determine whether the 'official function would suffer under the threat of prospective litigation' and whether the benefits to effective government and the rule of law outweigh the costs imposed on the victims. *Saul v. Larsen,* 847 F.2d 573, 575 (9th Cir.1988) (quoting *Forrester v. White,* 484 U.S. 219, ——, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988)).

The torts alleged by Little arise from Paul's investigation of Little for embezzlement. As the district court held, Paul's investigation was within the scope of Paul's official duties because it bore a reasonable relation to his obligations as an investigator for the Department of Labor. In fact, investigating *was* his official duty.

A discretionary function is required as the second element of the test because "[i]t is only when officials exercise decision-making discretion that potential liability may shackle 'the fearless, vigorous, and effective administration of policies of government.'" *Westfall,* 108 S.Ct. at 584 (*quoting Barr v. Matteo,* 360 U.S. at 571, 79 S.Ct. at 1339).

The district court did not address the discretionary function element of the test. This court can, however, decide the issue. *See Scott v. DeMenna,* 840 F.2d 8, 9 (11th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 138, 102 L.Ed.2d 110 (1988) (deciding the discretion issue on appeal even though it was not addressed below).

■ In this case, Paul's duties fit within those discretionary functions entitled to absolute immunity. The duty to investigate possible fraud and other criminal behavior is one federal activity which must not be inhibited by a possibility of civil liability. Paul has responsibility for all investigative activities undertaken by personnel in the Seattle office of the Labor Department. This includes investigation of possible fraud, waste and abuse in programs funded or administered by the Department of Labor. Paul supervises personnel and produces reports used by authorities to make their decisions. Because Paul exercises his discretion in directing investigative activities, Paul's investigation of Little was a discretionary function and the court below was correct in finding that no triable issue of fact exists as to Paul's liability for the state-law tort claims.

## 2. CONSTITUTIONAL VIOLATIONS

In addition to state-law tort claims, Little alleges that Paul violated his constitutional rights to equal protection and freedom from unreasonable search and seizure. Paul asserts that he is entitled to qualified immunity for any constitutional violations.

The rule as to qualified immunity is that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ Little is black and contends that Paul's investigation and recommendations were motivated by racial animus. Paul cannot be liable for his subjective thoughts and motives without some offensive act. *See id.* Even if he could be liable on that basis, here there is no evidence of racial motivation. Moreover, the criminal case went to the jury which was divided as to Little's guilt. Little entered into a consent decree, admitting his responsibility for repaying money which was spent in a manner not approved under the CETA contract. These facts support the conclusion that there was good reason for Paul's investigation. Because Little has not shown any violation of a clearly established constitutional right, Paul is not liable.

## 3. PAUL'S GRAND JURY TESTIMONY

Little argues that Paul was not entitled to absolute immunity for his testimony before the grand jury. Relying on *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the district court found Paul was absolutely immune. In *Briscoe,* the plaintiff sued police officers claiming the officers violated the plaintiff's constitutional rights by presenting perjured testimony during a criminal trial. The Supreme Court found the officers had absolute immunity from damages for their testimony. *Id.* 460 U.S. at 326, 103 S.Ct. at 1111.

■ The policy for granting immunity to trial witnesses involves avoidance of intimidation and self-censorship. *See id.* at 342, 103 S.Ct. at 1119. Granting immunity also prevents interference in the performance of governmental witness's duties by avoiding wasteful and time consuming litigation. *Id.* at 343–44, 103 S.Ct. at 1119. These policy considerations are equally applicable to grand jury testimony. Other circuits have applied the *Briscoe* immunity to grand jury witnesses. *See Macko v. Byron,* 760 F.2d 95, 97 (6th Cir.1985); *San Filippo v. U.S. Trust Co.,* 737 F.2d 246, 254 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). Paul is immune from damages for his testimony before the grand jury.

## 4. EXCULPATORY EVIDENCE

■ Little also complains that Paul failed to present some allegedly exculpatory testimony to the grand jury. A person has no right to have exculpatory evidence presented to the grand jury. *See, e.g., United States v. Fritz,* 852 F.2d 1175, 1178 (9th Cir.1988); *United States v. Al Mudarris,* 695 F.2d 1182, 1185 (9th Cir.), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2097, 77 L.Ed.2d 305 (1983). Thus, Paul did not violate any of Little's rights by not presenting such testimony.

## 5. STAY OF DISCOVERY

██ Little argues that the district court erred in staying discovery. The district court has wide discretion in controlling discovery. Such rulings will not be overturned unless there is a clear abuse of discretion. *Ellis v. Brotherhood of Ry., Airline & S.S. Clerks,* 685 F.2d 1065, 1071 (9th Cir.1982), *rev'd in part and aff'd in part,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed. 2d 428 (1984) (*citing Canadian American Oil Co. v. Union Oil Co. of California,* 577 F.2d 468 (9th Cir.), *cert. denied,* 439 U.S. 912, 99 S.Ct. 283, 58 L.Ed.2d 258 (1978)). Here, the judge stayed discovery until the issue of immunity was decided. The stay furthers the goal of efficiency for the court and litigants. Based on the facts presented in this case, discovery could not have affected the immunity decision. The trial court did not abuse its discretion by staying discovery until the immunity issue was decided.

The judgment is AFFIRMED.