**A. Eugene RAMEY, Appellant,**

v.

**Charles BOWSHER, Comptroller of the United States.**

Nos. 87–5305, 87–5306.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 18, 1988.

Decided Oct. 5, 1990.

Walter T. Charlton, Washington, D.C., for appellant.

Daniel Bensing, Asst. U.S. Atty., with whom Jay B. Stephens, John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Joseph E. diGenova, U.S. Atty., Michael J. Ryan, Bradley L. Kelly, Royce C. Lamberth, Asst. U.S. Attys., Washington, D.C., entered appearances for appellees.

Before EDWARDS and WILLIAMS, Circuit Judges, and ROBINSON, Senior Circuit Judge.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Appellant, Alfred Eugene Ramey, contends that his former employer, the General Accounting Office (GAO), discriminated against him on the basis of his sex when it promoted a female coworker to a position for which he had applied, and that several of his former supervisors committed tortious acts against him after he complained. He asks that we reverse the orders of the District Court dismissing his tort claims against the individual supervisors and

granting judgment for the Government on his claim of sex discrimination. He also asks that we direct the GAO to award him the promotion with retroactive benefits. Because we can find no merit in Ramey's claims, we affirm the orders of the District Court.

I. BACKGROUND

In late 1980, Ramey, a former GS–13 computer systems analyst in the Financial and General Management Studies (FGMS) division of the GAO, sought a promotion to GS–14. Jack Kearns, a group director in the FGMS division, interviewed Ramey and eight other applicants for promotion to the position of Accounting and Financial Systems Computer Specialist. Kearns rated and ranked each of the applicants based upon eight job elements in the job announcement; subsequently, Kearns awarded the position to Norma Drake, the applicant who had received the highest score during the interview process. Ramey was ranked lowest among all applicants. Upon learning that he had not been promoted, Ramey filed an administrative complaint charging discrimination based on sex. Later, after being denied a within-grade increase, Ramey amended the complaint to reflect new allegations of retaliation and reprisal.

The GAO Personnel Appeals Board, which has the authority to hear employees' discrimination claims, see 31 U.S.C. § 753(a)(7) (1982), determined that Ramey's non-selection had not been due to discrimination. It concluded, however, that Ramey "was denied his within-grade salary increase at least in part because of his having filed a complaint of discrimination against Kearns and other management officials." See Ramey v. GAO, 1 PAB R & D 102, 115–19 (Oct. 19, 1981), reproduced in part at Joint Appendix ("J.A.") at 333. Accordingly, the Appeals Board awarded Ramey the requested within-grade salary increase.

Ramey was not satisfied with the decision of the Appeals Board, so he filed the instant action in the District Court against the GAO's Comptroller General and against selecting official Kearns, in his in-

dividual capacity. Ramey charged the FGMS division with sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 (1982), and Kearns with various acts of libel, slander, civil fraud and conspiracy during both the selection process and the subsequent administrative appeal.

The District Court dismissed Ramey's tort claims against Kearns on immunity grounds.[1] *See Ramey v. Bowsher,* Civ.No. 82–0268 (D.D.C. Mar. 16, 1984) (order). Subsequently, after encountering further difficulties on the job which resulted in his termination, Ramey amended his complaint, adding several more former supervisors, in their individual capacities, as defendant tortfeasors. On March 6, 1985, the trial court granted the Government's partial motion to dismiss the additional charges made in the amended complaint, finding that the cited supervisors, like Kearns, were immune from suit. The remainder of the case was then set for trial.

On March 25, 1987, at the close of Ramey's case, the Government moved for a judgment in appellees' favor. J.A. at 265. The trial judge, ruling from the bench, granted the Government's motion, finding absolutely no evidence of sex discrimination. J.A. at 269–70.[2] On denial of his motion for a new trial, *see Ramey v. Bowsher,* No. 82–0268 (D.D.C. May 28, 1987) (order), Ramey noted an appeal from the orders of the District Court dismissing his suit against the individual supervisors and granting judgment for the Government on his claim of discrimination. He asserts that, contrary to the District Court's findings, he proved his claim of discrimination.

## II. ANALYSIS

### A. *Dismissal of the Claims Against the Individual Supervisors on Immunity Grounds*

Ramey argues that the District Court erred when it dismissed the tort claims against the supervisors on immunity grounds. We disagree. We find that each supervisor was entitled to assert his official immunity as an absolute bar to Ramey's tort claims.

In general, federal officials are *absolutely immune* from state-law tort actions when their conduct is "within the scope of their official duties *and* the conduct is discretionary in nature." *Westfall v. Erwin,* 484 U.S. 292, 297–98, 108 S.Ct. 580, 584, 98 L.Ed.2d 619 (1988) (emphasis in original). Thus, "federal officials are not absolutely immune from state-law tort liability for all actions committed within the outer perimeter of their duties;" rather, an official must demonstrate that he "exercised sufficient discretion in connection with the alleged tort to warrant the shield of absolute immunity." *Id.* at 299, 108 S.Ct. at 585. As the Court noted in *Westfall,* "[t]he central purpose of official immunity, promoting effective government, would not be furthered by shielding an official from state-law tort liability without regard to whether the alleged tortious conduct is discretionary in nature. When an official's conduct is not the product of independent judgment, the threat of liability cannot detrimentally inhibit that conduct." *Id.* at 296–97, 108 S.Ct. at 584.

An official who claims absolute immunity from personal liability bears the burden of "showing that such an exemption is justified." *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). The supervisors in the present case clearly have met this burden. First, it cannot be seriously disputed that they acted within the scope of their official duties. The alleged torts committed by the supervisors arose out of their evaluation of Ramey's work performance, their hiring and

---

1. Reconsideration was sought by Ramey and denied by the District Court. *Ramey v. Bowsher,* No. 82–0268 (D.D.C. Apr. 24, 1984) (order).

2. Prior to trial, Ramey had moved to dismiss his reprisal and retaliation claims against Bowsher because "full relief as to the reprisal by the Agency" had been granted by the administrative board when Ramey was restored to his job. Brief for Appellant at 12 (emphasis in original). The motion was granted. *Ramey v. Bowsher,* No. 82–0268 (D.D.C. Mar. 19, 1987) (order).

firing decisions, and their testimony at the administrative adjudicatory proceedings. *See* Tr. 7–16, J.A. at 25–34. We therefore have no trouble concluding that these activities bear "some reasonable relation to and connection with [their] duties and responsibilities." *Little v. City of Seattle*, 863 F.2d 681, 683 (9th Cir.1988) (citation omitted); *see, e.g., McKinney v. Whitfield*, 736 F.2d 766, 771 (D.C.Cir.1984) (quoting *Bishop v. Tice*, 622 F.2d 349, 359 (8th Cir.1980)) ("federal supervisors are generally entitled to absolute immunity 'from liability in tort for actions relating to the discharge of their subordinates'"); *Lawrence v. Acree*, 665 F.2d 1319, 1327 (D.C.Cir.1981) (per curiam) ("[a] supervisor's candid evaluation promotes efficient government by enabling an agency to identify and correct, and on occasion dispense with, performance that is unsatisfactory. The judgment might be distorted if their immunity from damages arising from that decision is less than complete").

Second, the record in this case indicates that the alleged tortious conduct of the supervisors was "the product of independent judgment," and the "exercise [of] decisionmaking discretion," of the sort described by the Supreme Court in *Westfall*, 484 U.S. at 296–97, 108 S.Ct. at 584. As the *Westfall* Court suggested, because of the nature of their job responsibilities, these supervisors remained free to evaluate job performance, make hiring and firing decisions, and testify at administrative adjudicatory proceedings without fearing potential personal liability arising from the exercise of these duties; to hold otherwise would be to "shackle" the supervisors in the exercise of their official duties so as to prevent them from pursuing "vigorous, and effective administration of the policies of government." 484 U.S. at 297, 108 S.Ct. at 584. On the record before us, we can find no error in the District Court's ruling that the supervisors' actions were "discretionary" in nature and, thus, protected by official immunity.

We reject appellant's argument that tortious acts are unlawful *per se* and therefore cannot be considered either discretionary or within the outer limits of the official's duties. "No government officer, of course, can be 'authorized' to act unlawfully. But if the scope of an official's authority or line of duty were viewed as coextensive with the official's lawful conduct, then immunity would be available only where it is not needed; in effect, the immunity doctrine would be 'completely abrogate[d]'." *Martin v. D.C. Metropolitan Police Dep't*, 812 F.2d 1425, 1429 (D.C.Cir.1987) (quoting *Briggs v. Goodwin*, 569 F.2d 10, 15 (D.C. Cir.1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978)).

■ The question before us is simply whether the supervisors took discretionary action within the outer limits of their official duties. Because we answer that question in the affirmative, we have no occasion to analyze Ramey's common-law tort claims. And to the extent that Ramey attempts to recast his tort claims against the supervisors as pure discrimination claims, they are in any event barred by the exclusive character of the Title VII remedy. *See Brown v. GSA*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976) (Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment").

## B. *The Judgment in Favor of the Government on the Claim of Sex Discrimination*

■ We also can find no error in the District Court's judgment that Ramey was not a victim of sex discrimination. "[A] court of appeals may only reverse a district court's finding on discriminatory intent if it concludes that the finding is clearly erroneous." *Pullman–Standard v. Swint*, 456 U.S. 273, 290, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). And "[w]hen findings are based on determinations regarding the credibility of witness-

es, Rule 52(a) demands even greater deference to the trial court's findings." *Id.* at 575, 105 S.Ct. at 1512. Under this standard of review, Ramey's appeal is plainly unmeritorious.

At trial, Ramey heavily relied upon the testimony of Dr. Earl Wysong, a former employee at the GAO, to establish that his coworker, Ms. Drake, should not have been promoted because she was not qualified for the GS–14 position. Tr. 75, J.A. at 62; *see also* Tr. 478–79, J.A. at 250–52, 263 (testimony of former GAO employee Austin Dayton that Ramey's work was "superior" to Drake's). In short, Wysong claimed that, under the requirements of the position description, Ms. Drake was not fit for the GS–14 job. Tr. 75–76, J.A. at 62–63. On cross examination, however, Wysong conceded that his analysis of Drake's qualifications was based solely on an assessment of documentary evidence; that, during a period when he was also supervising Ramey, he had hired Drake as a GS–13 in the FGMS division and given her performance ratings that were superior to Ramey's, Tr. 80, 102–03, J.A. at 67, 89–90; and that he himself had declined to promote Ramey to a GS–14. Tr. 107–09, J.A. at 94–96; *see also* J.A. at 438, 440–50. Dr. Wysong's credibility was reduced even further when he admitted that he had been forced to accept a down-grade at the GAO after being charged with a violation of the agency's regulations. Tr. 83–91, 387–89, J.A. at 70–78, 229–31. In light of this evidence, as well as the witness' demeanor, the District Court rejected the testimony of Dr. Wysong as incredible, Tr. 269, and we see no reason to disturb that finding. *See Anderson v. City of Bessemer,* 470 U.S. at 575, 105 S.Ct. at 1512 (due regard is given to the trial judge's assessment of credibility of witnesses); *Bishopp v. District of Columbia,* 788 F.2d 781, 786 (D.C.Cir.1986) (appellate courts should be particularly careful to defer to the district court's credibility findings).

The record also supports the District Court's view that Drake was not only qualified for the position, but probably even better qualified than Ramey. *See* Tr. 103– 04, 106–08, J.A. at 90–91, 93–95 (testimony of former supervisor Wysong regarding Ramey's ineffective communication skills and average work performance); Tr. 220–25, J.A. at 127–32 (testimony of former senior supervisor Joseph Donlon regarding Ramey's average performance rating); Tr. 279–84, J.A. at 155–60 (testimony of former supervisor Kearns who rated Drake's skills as "exceptional" and Ramey's skills as "proficient," exceptional being considered the superior rank); Tr. 358–61, 374–75, J.A. at 221–24, 226–27 (testimony of former supervisor Paul Benoit that Ramey's written work was "substandard" and his oral communications skills "were not very understandable," while Drake's performance was "fine" and that she was a "quick learner" and "articulate").

Even assuming, *arguendo,* that Drake was not better qualified than Ramey, there is still nothing in the record to indicate that Drake was selected "because she was a female and [he] was a male." Tr. 500, J.A. at 270; *see International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (in a disparate treatment case, "[p]roof of discriminatory motive is critical"). Employers have the discretion to choose among qualified candidates, "provided that the decision is not based upon unlawful criteria." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 259, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207. Moreover, "that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability...." *Id.* Here, we agree with the District Court that if any bias influenced Ramey's superiors, it stemmed from the fact that Drake "was better liked or because Mr. Ramey was actively disliked, or any one of numerous other hypotheses, which may not be particularly elegant, but, nevertheless, ... do not represent sex discrimination." Tr. 500, J.A. at 270.

We also reject Ramey's allegations that the decision to promote Drake was based upon some unlawful scheme of affirmative action. The trial court found that Ramey's qualifications were not superior to those of

Drake; that Drake was not "preselected" for the job and that her selection was based on merit, not her sex; and that even if other factors were considered (such as Drake being "better liked" or Ramey being "actively disliked"), these factors did not reflect discrimination on the basis of sex. J.A. at 270. The trial court's findings on these points are not clearly erroneous, and they clearly belie any claim that Drake was somehow the beneficiary of some unlawful scheme of preferential placement.

Ramey advances the further claim that Kearns improperly balanced the scales in favor of Drake when he relied on the criteria listed in the job announcement rather than on the criteria in the position description. Specifically, Ramey avers that the position description required a "working knowledge of the application of automated techniques in a Government agency to accounting and financial management systems...." J.A. at 278, and that there is no requirement of "working knowledge" in the announcement. While it is true that the job announcement does not specifically cite "working knowledge" of accounting, as does the position description, it does state that applicants must possess "[s]kill in applying automatic data processing principles, theories and methodologies to application requirements (e.g., accounting, logistics, etc.) of considerable difficulty ... and a rough understanding of automated financial management systems." Thus, the position description and job announcement cannot be viewed as measurably different in any important respects.

Because we find no merit in Ramey's contentions, we have no grounds to question the judgment of the District Court that Ramey was not the victim of sex discrimination.

C. *Alleged Errors in Trial Proceeding*

██ Ramey's remaining contentions, concerning alleged errors in the trial proceedings, are equally unfounded. First, contrary to Ramey's argument on appeal, we agree with the trial judge that further briefing on the sex-discrimination claim was unnecessary. Ramey's counsel was given a full opportunity to present all relevant arguments and evidence to the District Court before the trial judge ruled from the bench. Indeed, this point was virtually conceded by counsel; just prior to the close of trial, Ramey's counsel stated "the evidence of sex discrimination in this case is implicit in the facts already in the record." Tr. 495, J.A. at 265. Furthermore, the trial judge told Ramey's counsel that, "if it becomes necessary to impeach Mr. Kearns, you are entitled to offer an exhibit at some later point in the trial. You are not foreclosed from offering an exhibit ... simply because you have rested." Tr. 338, J.A. at 202. Finally, there was an extensive argument on the Government's motion for judgment, see J.A. at 265–69, during which Ramey's counsel was given full rein to argue his client's case. On the record before us, the trial judge provided appellant with a full and fair opportunity to make his arguments and present his evidence without the necessity of further briefing. Thus, we cannot find that the District Court abused its discretion in denying appellant's request for briefing.

Additionally, even if, *arguendo*, the District Court initially erred in excluding the administrative record of the GAO proceedings and prohibiting the impeachment of certain witnesses, these alleged errors were cured once the trial judge accepted into evidence both the administrative record and impeachment information. *See* Tr. 352–54, J.A. at 215–17. Furthermore, before its inclusion, Ramey repeatedly used matters from the administrative record in an effort to impeach certain witnesses and to edify the court. *See, e.g.,* Tr. 237, J.A. at 141 (reference to statement by former supervisor Donlon in administrative record that was allegedly inconsistent with statement at trial); Tr. 326, J.A. at 191 (reference to a nuclear regulatory report to impeach testimony of Kearns); Tr. 345–49, J.A. at 208–12 (reading passages of prior testimony by Kearns at administrative proceedings into record for impeachment purposes); Tr. 498, J.A. at 268 (referring to

position description and job announcement exhibits from administrative record). *See also* Tr. 56–57, J.A. at 59–60; Tr. 142–43, J.A. at 99–100; Tr. 203–05, J.A. at 110–12, J.A. at 282–300 (introduction and admission of Drake's prior testimony before GAO for impeachment purposes).

On the record before us, we can find no merit in Ramey's claims regarding any alleged errors in the trial proceedings.

### III.   Conclusion

For the reasons given, the orders of the District Court are affirmed.

*It is so ordered.*