980 F.2d 738
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Glynn Edward SCOTT, Plaintiff-Appellant,
v.
Ron ANGELONE, et al., Defendants-Appellees.
 No. 91-16182.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 6, 1992.*
Decided Nov. 27, 1992.
 
 Before SNEED, ALARCON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Glynn Edward Scott appeals from the order granting summary judgment in favor of Ron Angelone and Sallye C. Limbert, employees of the Nevada Department of Prisons (collectively, the "Department"). Scott seeks reversal on the following grounds: (1) the district court erred in issuing a protective order prohibiting Scott from engaging in discovery pending the district court's ruling on the Department's motion for summary judgment; (2) the district court erred in concluding that the Department afforded Scott adequate due process protections in deducting money from and freezing his inmate trust account; and (3) the district court erred in granting summary judgment because there are genuine issues of material fact in dispute regarding whether the Department's conduct concerning Scott's inmate trust account was in accordance with established departmental procedures. We affirm.
 
 I.
 
 3
 Glynn Edward Scott is an inmate at the Northern Nevada Correctional Facilities. Appellees are employees of the Nevada Department of Prisons. Ron Angelone serves as Director of Prisons ("Director") and Sallye C. Limbert is employed as Chief of Inmate Services.
 
 
 4
 The Department's administrative regulations and directives permit the Director to deduct four dollars from an inmate's trust account for each initial, inmate-initiated, non-emergency medical visit. These regulations also permit the Director to freeze an inmate's trust account when the balance falls below ten dollars and unpaid charges have been incurred by an inmate.
 
 
 5
 On several occasions between June 18, 1990, and August 27, 1990, the Department deducted money from Scott's inmate trust account as reimbursement for medical co-payments. When the balance of Scott's account fell below ten dollars, the Department froze it.
 
 
 6
 On August 30, 1990, Scott complained to the Department pursuant to established grievance procedures that his inmate trust account had been overcharged. In his grievance complaint, Scott alleged that several of his medical visits had been follow-up appointments that were not chargeable under departmental regulations.
 
 
 7
 On October 9, 1990, Scott received notice from Inmate Services acknowledging that an error had been made. The Department credited Scott's trust account a total of twenty dollars, four dollars for each incorrect medical charge.
 
 
 8
 On December 20, 1990, Scott filed a civil rights complaint in the United States District Court for the District of Nevada pursuant to 42 U.S.C. § 1983, alleging that the Department denied him due process of law under the Fourteenth Amendment when it froze his inmate trust account and deducted money for follow-up medical appointments.
 
 
 9
 On February 13, 1991, the Department filed a motion for summary judgment. On June 17, 1991, the district court granted the Department's motion for a protective order preventing Scott from conducting discovery pending determination of the motion for summary judgment. One week later, on June 23, 1991, the district court granted the Department's motion for summary judgment. The judgment was entered on July 5, 1991. On July 23, 1991, Scott filed a timely notice of appeal.
 
 II.
 
 10
 A district court's order limiting the scope of discovery is reviewed for abuse of discretion. United States v. Bourgeois, 964 F.2d 935, 937 (9th Cir.), cert. denied, 61 U.S.L.W. 3264 (October 5, 1992).
 
 
 11
 We review de novo a district court's grant of a motion for summary judgment. Kruso v. Int'l Tel. and Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). Our review is governed by the same summary judgment standard used by the trial court. Fed.R.Civ.P. 56(c). Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 III.
 
 12
 Scott contends that the district court erred in granting the Department's motion for a protective order to prevent discovery pending a ruling on the motion for summary judgment. Scott asserts that the district court failed to apply the proper standard to determine whether a protective order should issue and improperly prevented him from discovering pertinent facts. We disagree.
 
 
 13
 A district court enjoys broad discretion in controlling discovery. Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir.1988). A district court may limit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). Discovery may be limited "when [the court] is convinced that the plaintiff will be unable to state a claim for relief." Wood v. McEwen, 644 F.2d 797, 801 (9th Cir.1981), cert. denied, 455 U.S. 942 (1982).
 
 
 14
 Whether a predeprivation hearing is constitutionally required is a question of law. See Belnap v. Chang, 707 F.2d 1100, 1102 (9th Cir.) (whether due process has been afforded is a question of law), cert. denied, 464 U.S. 1009 (1983). Because Scott failed to demonstrate that he was entitled to a predeprivation hearing, even if the facts alleged in his complaint were true, the district court did not abuse its discretion by staying discovery.
 
 IV.
 
 15
 Scott asserts that the Department denied him due process by failing to provide him with a hearing before deducting money for medical visits and freezing his inmate trust account.
 
 
 16
 The Fourteenth Amendment prevents a state from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV. Due process protections attach to property when an individual has an entitlement created by a statute, regulation, or ordinance. Orloff v. Cleland, 708 F.2d 372, 377 (9th Cir.1983). A prisoner has a protected property interest in the funds in his inmate trust account. Quick v. Jones, 754 F.2d 1521, 1523 (9th Cir.1985).
 
 
 17
 The Department does not dispute Scott's protected property interest in his inmate trust account. Scott's property interest in these funds, however, is not absolute. Nevada Revised Statute 209.241(2)(b) provides that the director "[m]ay permit withdrawals for immediate expenditure by an offender for personal needs." Additionally, the Director of the Nevada Department of Prisons must "establish by regulation criteria for a reasonable deduction from money credited to the account of an offender to ... [d]efray the costs paid by the Department for medical care for the offender." Nev.Rev.Stat. § 209.246.
 
 
 18
 Here, the Department relied on two administrative regulations to deduct money from Scott's account and to freeze it when overdrawn. Administrative Regulation 245 ("AR 245") sets forth the policy, practice, and procedure adopted by the Department for charging inmates for self-initiated medical visits:
 
 
 19
 Inmates will be charged a sum of four dollars ($4.00) for each visit initiated by the inmate to an institutional physician, physician's extender (physician's assistant or nurse practitioner), dentist, optometrist, or psychiatrist for the examination or treatment. Inmates will not be charged for medical visits initiated by medical/mental health staff, referrals to a physician from physician extenders, emergency treatment, or follow-up visits initiated by a medical professional, unless the medical treatment is for injuries inflicted by the offender to himself or others.... No inmate will be refused medical/mental treatment for financial reasons.
 
 
 20
 Administrative Directive 53-90 ("AD 53-90") permits the Department to debit an inmate's trust account for medical visits so long as the inmate has signed a "brass slip" or medical "sign-in sheet" authorizing payment from his inmate trust account. When the inmate trust account has a balance of $10.00 or more, AD 53-90 further authorizes the Department to collect "100% of any balance over $10.00 or the amount owed." The directive provides that when the account balance is $10.00 or less, the account will be frozen.[1] Thus, although Scott retains a protected property interest in his inmate trust account, that interest is fettered by the Director's authority to withdraw funds authorized by the inmate and to freeze the account until sufficient funds exist from which to make the authorized deductions.
 
 
 21
 Once we find a protected property interest, we must then decide what process is due. Quick, 754 F.2d at 1523. Due process is a flexible concept. Morrissey v. Brewer, 408 U.S. 471, 481 (1972). Application of the due process analysis requires "a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." Id. In many circumstances, the Constitution requires some form of hearing before a State deprives a person of a protected property interest. Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982). Under other circumstances, postdeprivation remedies have been found to satisfy due process. Parratt v. Taylor, 451 U.S. 527, 538 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).
 
 
 22
 Scott contends that he was entitled to notice and a hearing before the Department deducted money for medical visits and froze his inmate trust account. The Department asserts that postdeprivation procedures afforded Scott adequate due process protections. We conclude that Scott was afforded both adequate predeprivation and postdeprivation protections.
 
 
 23
 Due process requires only "such procedural protections as the particular situation demands." Morrissey, 408 U.S. at 481. In this case, AR 245 and AD 53-90 provide inmates with sufficient notice of the billing procedure. The directive informs inmates that signing a "brass slip" or medical "sign-in sheet" authorizes the Department to make a deduction and to freeze the inmate trust account if it falls below ten dollars. Moreover, inmates are provided with the constructive equivalent of a hearing before deductions are made from their accounts. An inmate is billed only for those initial medical visits he has requested after signing a "brass slip" or medical "sign-in sheet" authorizing payment from his account. The freezing of an account occurs only when the inmate has authorized payment and when the balance of the account is $10.00 or less. Thus, under the directive and the regulation, an inmate is provided with both notice that deductions will be made and a predeprivation opportunity to determine whether he or she will authorize the deductions. If the "brass slip" or medical "sign-in sheet" is not filled out by the inmate, the Department cannot make a deduction.
 
 
 24
 To satisfy the requirements of due process, the hearing granted must be meaningful. Boddie v. Connecticut, 401 U.S. 371, 378 (1971). Under the procedures applicable in this matter, the opportunity accorded to Scott to preclude a deduction by declining to sign the "brass slips" or medical "sign-in sheets" constitutes a meaningful "hearing." AR 245 specifies that "[n]o inmate will be refused medical/mental health treatment for financial reasons." Under this provision, if an inmate refuses to sign a "brass slip" or medical "sign-in sheet" authorizing medical co-payments, the Department cannot deprive that inmate of medical treatment if he has insufficient funds in his inmate trust fund. Thus, the Department afforded Scott adequate predeprivation due process protections by notifying him of the Department's policies and providing him a meaningful procedure to preclude a deprivation.
 
 
 25
 In addition to the predeprivation procedures, the Department also provides postdeprivation remedies for an erroneous deduction from the inmate trust account through its accounting inquiry and inmate grievance procedures. The Department allows a prisoner to file an accounting inquiry to contest the validity of the charges made to his account.
 
 
 26
 On August 30, 1990, Scott filed an accounting inquiry and complained that improper deductions had been made from his inmate trust account for follow-up treatment. Upon investigation of Scott's grievance, the Department agreed that an error had been made and credited his account. The fact that Scott has been reimbursed for the erroneous deprivations demonstrates that the Department's postdeprivation grievance procedures provide adequate due process protections. We are persuaded that the Department's procedures provided Scott with all the process due to him under the circumstances.
 
 V.
 
 27
 Scott also asserts that summary judgment was improper because the procedures set forth in the directive and the regulation were not followed. This contention was not presented to the district court. In addition, Scott now alleges that the Department's policies of deducting money from and freezing his inmate trust account are punitive and discriminatory as applied to him. Scott also contends that the Department lacked the authority to freeze his trust account to collect postage and copy charges. These issues are also presented for the first time on appeal.
 
 
 28
 In general, we will not consider issues raised for the first time on appeal. White v. McGinnis, 903 F.2d 699, 700 n. 4 (9th Cir.) (en banc), cert. denied, 111 S.Ct. 266 (1990). We recognize three exceptions to this prudential rule. We will consider an issue for the first time when: (1) a change in the law raises a new issue while an appeal is pending; (2) the issue is purely one of law; or (3) review is necessary to prevent a miscarriage of justice. Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir.1985).
 
 
 29
 Scott's contentions do not satisfy any of these exceptions. Scott does not raise any new issues resulting from changes in the law. Because Scott failed to allege to the district court that he did not authorize deductions or that the Department discriminated against him, his new claims are not limited to a determination of questions of law. Scott has failed to demonstrate that failure to review his unsupported factual allegations will result in a miscarriage of justice.
 
 
 30
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The district court relied on Administrative Directive 16-91 in its opinion. Directive 16-91, dated January 7, 1991, was not in effect when the Department froze Scott's inmate trust account. Directive 53-90, dated April 20, 1990, and Directive 53-90 (revised), dated August 2, 1990, were in effect on the relevant dates. Directive 16-91 modifies Directive 53-90 only to the extent that the amount collected from an inmate's account that has a balance of $10.00 or more is 50% of each incoming deposit, instead of 100% of the amount owed. Both AD 53-90 and AD 16-91 inform the inmate that his account will be frozen when the account balance is $10.00 or less until a deduction can be made