65 F.3d 174
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Glenn FREEDMAN, Plaintiff-Appellant,
v.
EVEREST AND JENNINGS INTERNATIONAL Ltd.; Estate of Gerald
M. Jennings; Whitney A. McFarlin; Raymond V. Thomas;
Dianne J. Jennings; Robert G. Sutherland; Richard C.
Fuller; Robert E. Alshuler; Lewis J. Whitney, Defendants-Appellees.
 No. 92-55043.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1993.
Decided Aug. 24, 1995.
 
 Before: BROWNING, Circuit Judge, BRIGHT,* and WRIGHT,** Senior Circuit Judges.
 MEMORANDUM***
 Dismissal under Rule 9(b) was not appropriate. Rule 9(b) "does not require that the complaint set forth facts giving rise to an inference of scienter, nor that it furnish a detailed exegesis of how the defendants came by the knowledge of those facts which belie their statements." In Re: GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1554 (9th Cir.1994). It requires "only that the circumstances constituting fraud ... be set forth with particularity." Id.
 The "circumstances constituting fraud" are sufficiently alleged under Rule 9(b) if the complaint identifies the "time, place and nature of the alleged fraudulent activities." Wool v. Tandem Computers, 818 F.2d 1433, 1439 (9th Cir.1987). To successfully identify the "nature of the alleged fraudulent activities," the complaint must state with particularity the "specific content" of the allegedly fraudulent statements, Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir.1985), as well as the "reasons for [the statements'] falsity," Blake v. Dierdorff, 856 F.2d 1365, 1369 (9th Cir.1988). See also GlenFed at 1548 ("To allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.")
 Plaintiff's allegations regarding the sudden changes in E & J's financial condition, without more, were not sufficient to meet this standard. Were they sufficient, any company experiencing a severe financial setback--or a sudden, unforeseen success--would be vulnerable to a Section 10(b) suit for that reason alone.
 The terms of the Medco Group acquisition did not support an inference of fraud. E & J's financial problems were disclosed well before completion of the acquisition. Moreover, Plaintiff's assumption that fraud is suggested merely by the desire of the Defendants to keep the price of their stock high is flawed. If the presence of such a desire, by itself, supported an inference of fraud, virtually any purchase of assets with stock would be suspect since it always is in the interest of the purchasing company to keep the price of its stocks as high as possible.
 The consolidated reporting of North American financial data offered no support for an inference of fraud. The complaint alleged that because of the consolidated format, E & J's claim in its 1988 Annual Report that it had "solidified the 'turnaround' at [its] domestic operation" was misleading. Aside from disclosures of losses in domestic operations made in 1990, the only fact the complaint alleged to suggest the consolidated format was misleading was E & J's failure to disclose in its 1988 Annual Report that it had incurred losses in its U.S. operations each year after 1985. However, the existence of prior losses in United States operations did not contradict the claim that E & J had "solidified its turnaround" in those operations and the restructuring status report implied no predictions about future profits that rendered the claim otherwise false or misleading. Historically, E & J had used a consolidated format to report the status of its North American operations, and there was no allegation E & J made any changes in this method of reporting before or during the class period.
 However, although we regard the issue as close, we conclude Plaintiff's allegations regarding E & J's "admission" that inventory was overstated in the 1989 10-K report and the unexplained reduction of price in the Jennings' stock transaction, combined with E & J's sudden financial turnaround, offer sufficient support for an inference E & J fraudulently misrepresented its financial condition to preclude dismissal under Rule 9(b).
 E & J concedes on appeal the statement in the 1989 10-K report regarding inventory was an admission that "inventory problems likely existed prior to the fourth quarter of 1989," but argues that failure to report actual inventory does not support an inference of fraud because the complaint does not allege facts indicating E & J knew the inventory was overstated in the earlier reports. However, under Rule 9(b), "knowledge and other condition of mind may be averred generally," and the complaint alleged E & J knew its statements were untrue.
 The renegotiation of the Jennings' stock sale price also supports the inference that E & J's earlier reports fraudulently misrepresented its financial condition. Under the original purchase agreement, the Jennings family had a contractual right to $11.00 a share. The allegation that they accepted $8.50 a share, a substantial reduction from the price to which they were contractually entitled, supports the inference that the parties knew the $11.00 figure overrepresented E & J's true value.[1]
 Although we find Plaintiff's complaint adequate under Rule 9(b),[2] we emphasize the district court's broad discretion to limit discovery on remand to specific issues such as whether E & J knew its inventories were overstated before the fourth quarter of 1989, why the Jennings family agreed to give up its contractual right to $11.00 per share and how E & J's financial condition could have declined so dramatically in the final quarter of 1989. See Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir.1988) (trial court's decision to limit discovery reviewed for abuse of discretion); Century 21 Real Estate v. Sandlin, 846 F.2d 1175, 1181 (9th Cir.1988) (same).
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable Myron H. Bright, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 **
 Judge Wright was drawn to replace Judge Tang. He has read the briefs, reviewed the record, and listened to the tape of oral argument held on June 9, 1993
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 E & J argues the renegotiation cannot support an inference of fraud because the sale price was reduced on January 24, 1990, after E & J had disclosed in a January 23, 1990 press release that E & J was experiencing severe financial problems. However, Plaintiff alleged that although the agreement to reduce the price was dated January 24, the parties to the transaction discovered the facts "giving rise to the modification" before January 23 and the "period of negotiation of a modified selling price, for drafting the necessary modifications and SEC filings, and for obtaining signatures" ended before the press release was issued. If these allegations are "taken as true and construed in the light most favorable to [Plaintiff]," Levine v. Diamanthuset, Inc. 950 F.2d 1478, 1482 (9th Cir.1991), they contribute to the inference that E & J fraudulently misrepresented its financial conditions in its earlier reports
 
 
 [2]
 Having concluded Plaintiff failed to allege the essential element of fraud with sufficient particularity, the district court also granted E & J's motion to dismiss under Rule 12(b)(6) for failure to state a claim. Since we conclude Plaintiff adequately alleged fraud, the dismissal under Rule 12(b)(6) must also be reversed
 Although we find Plaintiff's complaint sufficient under Rules 9(b) and 12(b), we note it might not have survived a challenge under Rule 8(a)(2), which requires a pleading to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." The majority of the 55-page First Amended Complaint is devoted to reciting--and often repeating--E & J's allegedly false statements. Much less space is devoted to why those statements were fraudulent. Rule 8(a) is designed to avoid such unnecessarily detailed allegations.