Jeffrey A. SAUL, Plaintiff–Appellant,

v.

Ray LARSEN; Jane Doe Larsen; Colleen St. Louis; John Doe St. Louis, Defendants–Appellees.

No. 87–3745.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1988.

Decided May 25, 1988.

Samuel Kornhauser, Rose & Kornhauser, San Francisco, Cal., for plaintiff-appellant.

Christopher L. Pickrell, Asst. U.S. Atty., Seattle, Wash., for defendants-appellees.

Before WRIGHT, ALARCON and POOLE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This case involves federal employees' immunity to state and constitutional tort claims based on acts taken in their official capacities. The district court granted the defendants' motion for summary judgment,

concluding that they were absolutely immune. We affirmed that decision in an unpublished Memorandum filed January 13, 1988, 837 F.2d 482.

On January 12 and 13 the Supreme Court decided two cases that affect our analysis of the defendants' immunity: *Forrester v. White*, — U.S. —, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) and *Westfall v. Erwin*, — U.S. —, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). In light of those decisions, we grant Saul's petition for rehearing, vacate our unpublished Memorandum filed previously, and remand to the district court.

BACKGROUND

Saul worked as a Claims Representative for the Social Security Administration (SSA) and volunteered as a union representative. Larsen was an SSA "Area Director." His responsibilities included hearing grievances under the collective bargaining agreement and maintaining relations with outside organizations and institutions. St. Louis was an SSA "Operations Supervisor." It was her responsibility to monitor the performance of SSA employees and maintain work flow in her unit. She supervised Saul.

In 1985, Saul filed a grievance concerning an SSA policy that required him to take vacation leave when he took time from his SSA job to work as a union representative. Larsen heard Saul's grievance and wrote to the Union explaining his decision. Saul claims that Larsen defamed him in this letter.

After Saul filed his grievance, he wrote to a Congressman to complain about SSA union policies. Larsen learned of the letter and called an aide in the Congressman's office to explain the agency's position. He disclosed to the aide that Saul's work performance was poor, that he filed many complaints against SSA, and that two SSA personnel libraries refused him access. Saul claims that these statements also defamed him.

Saul's difficulties with St. Louis are based on her responsibilities for supervising and monitoring incoming mail and for monitoring workers' overtime hours. He alleged that St. Louis opened his mail in violation of agency policies and that her conduct was an invasion of privacy. St. Louis claims that she acted under a long standing policy and within her duties as "Operations Supervisor."

Saul complains also that St. Louis prohibited him from working at his desk before and after hours and did this to harass him. She claims that she acted within her authority to ensure that overtime hours were authorized.

Saul sued in state court under theories of common law tort defamation, intentional infliction of emotional distress, and invasion of privacy. He sought $50,000 damages for "loss of ... reputation, shame, mortification, humiliation, emotional distress and hurt feelings," and $200,000 in exemplary and punitive damages. He also made out claims that Larsen violated his liberty interest in his reputation and that St. Louis violated his right of privacy in his mail, both of which he claimed were protected by the federal constitution.

Larsen and St. Louis removed the case under 28 U.S.C. § 1442 (federal officers may remove to federal court pending state court action in which officer is defendant). Several weeks later, Saul's attorneys requested that Larsen and St. Louis produce certain discovery items within one month. They failed to respond within the month. Rather, 12 days after the one month deadline, their attorney moved to quash or stay the request and moved for summary judgment.

The court granted summary judgment of dismissal, concluding that as federal officers, Larsen and St. Louis were immune to state and constitutional tort claims arising from actions taken pursuant to official duties. Because the court decided the claims on summary judgment, it granted the motion to quash concluding that further discovery was not appropriate. Saul appeals.

ANALYSIS

A. *Removal*

◼ Saul's claims were removed under 28 U.S.C. § 1442(a)(1), which provides:

A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States.... Any office of the United States or any agency thereof, or person acting under him, for any act under color of such office.

28 U.S.C. § 1442(a)(1).

He argues that the district court should not have accepted the case because he sued Larsen and St. Louis in their individual capacities, not as federal officers. Although he did not raise this issue below, we consider it on appeal as an issue affecting our jurisdiction.

28 U.S.C. § 1442 was enacted to "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of ... official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241, 101 S.Ct. 1657, 1644, 68 L.Ed.2d 58 (1980). Section 1442 removal is proper when a federal officer may claim as a defense that the action on which the suit is based was taken as part of his or her official duties. Because the acts of which Saul complained were performed by Larsen and St. Louis in their capacities as federal officers and they assert this as a defense, removal was proper.

### B. *State Tort Claims*

█ In *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the Supreme Court explained federal officials are immune to state tort claims.

> It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

360 U.S. at 571, 79 S.Ct. at 1339. Because of these threats to effective administration of government,

> it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

360 U.S. at 572, 79 S.Ct. at 1340 (quoting Learned Hand in *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950)).

In *Forrester* and *Westfall* the Supreme Court clarified the extent of this immunity. It made two points that affect our analysis of this case. First, federal officials do not enjoy immunity for all acts taken within the scope of their authority. Rather, the act or conduct must be discretionary. The Court explained this requirement:

> The central purpose of official immunity, promoting effective Government, would not be furthered by shielding an official from state-law tort liability without regard to whether the alleged tortious conduct is discretionary in nature. When an official's conduct is not the product of independent judgment, the threat of liability cannot detrimentally inhibit the conduct. It is only when officials exercise decisionmaking discretion that potential liability may shackle "the fearless, vigorous, and effective administration of policies of government."

*Westfall*, 108 S.Ct. at 584 (citation omitted).

The second significant point is that not every discretionary act warrants immunity. Before granting official immunity, we must determine whether the "official function would suffer under the threat of prospective litigation" and whether the benefits to effective government and the rule of law outweigh the costs imposed on the victims. *Forrester*, 108 S.Ct. at 542.

> An injured party with an otherwise meritorious tort claim is denied compensation simply because he had the misfortune to be injured by a federal official. Moreover, absolute immunity contravenes the basic tenet that individuals be held accountable for their wrongful conduct. We therefore have held that absolute immunity for federal officials is justified only when "the contributions of immunity to effective government in particular

contexts outweigh the perhaps recurring harm to individual citizens."

*Westfall,* 108 S.Ct. at 583 (citation omitted).

In granting summary judgment for the defendants, the court did not consider whether Larsen's and St. Louis's allegedly tortious acts were discretionary and did not balance the "costs and benefits" as required by *Forrester* and *Westfall.* From the record as it exists now, we cannot make these determinations. We reverse the court's summary judgment for the defendants and remand for further proceedings in light of *Forrester* and *Westfall.*

### C. *Constitutional Tort Claims*

 Saul claims that the court erred as a matter of law in concluding that Larsen and St. Louis were immune to his constitutional tort claims.

Federal officials "performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court explained that,

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.... If the law at [the time an action occurred] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Id.*

In light of *Forrester* and *Westfall,* we remand these claims also for consideration of the discretionary nature of the defendant's acts. The district court may wish to take further evidence before entering findings and conclusions.

### CONCLUSION

Saul's petition for rehearing is granted. We vacate the memorandum filed January 13, 1988, reverse the court's grant of summary judgment, and remand. Because we reverse the court's grant of summary judgment, Saul's complaint about the court's order to quash his discovery request is moot. Saul's suggestion for *en banc* consideration is rendered moot by this opinion.