**Charles W. Heleba, John Hibbard, Harold L. Mills, Philip Pinkowski, Sr., Lowell W. Seward, John L. Williams and R.H. Williams v. Ronald Allbee, Commissioner of Agriculture; State of Vermont**

[628 A.2d 1237]

No. 90-054

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 17, 1992

Motion for Reargument Denied June 1, 1993

284

*Peter H. Banse* of *Banse & McCoy*, Manchester Center, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, *William E. Griffin*, Chief Assistant Attorney General, and *William H. Rice*, Assistant Attorney General, Montpelier, for Defendants-Appellees.

**Gibson, J.** Plaintiffs challenge the constitutionality of the Dairy Industry Income Stabilization Program (DIISP), 6 V.S.A. §§ 2991–2998, contending that (1) there is no rational basis for the program's exclusion of farmers who are not mem-

bers of a cooperative, and (2) such discrimination violates their constitutionally protected freedom of association.

The DIISP subsidizes dairy farmers who meet certain eligibility requirements, including membership in a regional marketing cooperative. Plaintiffs are dairy farmers who do not belong to a cooperative. They initiated this suit under 42 U.S.C. § 1983 against defendants Ronald Allbee, Commissioner of Agriculture, and Emory Hebard, State Treasurer, in their official and individual capacities.

The trial court granted defendants' motion for summary judgment and dismissed the suit in its entirety. It ruled that, insofar as defendants were sued in their individual capacities, they were entitled to qualified immunity from the § 1983 claim and absolute immunity from the claim grounded on the Vermont Constitution. With respect to the claims against defendants in their official capacities, the court concluded that the State of Vermont was the real party in interest and was entitled to sovereign immunity. On appeal, plaintiffs contend that (1) the State has waived its sovereign immunity, and (2) defendants are not entitled to qualified immunity.[1] We affirm with respect to defendants in their individual capacities but reverse and remand for trial against defendants in their official capacities.

## I.

Plaintiffs argue that the State waived its sovereign immunity when the Legislature reserved a portion of the DIISP appropriation for payment of plaintiffs' claims, should their suit be successful. Defendants argue that the waiver, if made, was re-

---

[1] Plaintiffs do not independently analyze their Vermont constitutional claim, and we therefore do not address it. See *Shields v. Gerhart*, 155 Vt. 141, 151, 582 A.2d 153, 159 (1990) (noting that it is an open question whether a damages action can be grounded on violations of Vermont Constitution, Court declined to address defense of sovereign immunity to such claims where it was not argued); *State v. Gleason*, 154 Vt. 205, 212, 576 A.2d 1246, 1250 (1990) (proponent bears burden of explaining how or why the Vermont Constitution affords greater rights than the federal constitution). Further, we note that 42 U.S.C. § 1983 does not provide a means to litigate alleged violations of the Vermont Constitution. See *Williams v. State*, 156 Vt. 42, 47, 589 A.2d 840, 843 (1990) (§ 1983 "provides a private remedy for those alleging abridgement of *federal* rights") (emphasis added).

voked when the State subsequently spent the money for other purposes. Both parties mischaracterize the issue.

The elements of, and the defenses to, a § 1983 action are defined by federal law. *Howlett v. Rose*, 496 U.S. 356, 375 (1990). A state may not create a cause of action under § 1983 against any entity that Congress has not subjected to liability. *Id.* at 376. Thus, if a state is not a "person" as that term is used in § 1983, it cannot be subjected to suit, whether it waives sovereign immunity or not. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 85 (1989) (Brennan, J., dissenting) ("If States are not 'persons' within the meaning of § 1983, then they may not be sued under that statute regardless of whether they have consented to suit.").

The United States Supreme Court has ruled that neither a state nor a state official sued in an official capacity for damages is a "person" for purposes of a § 1983 action. *Will*, 491 U.S. at 71. Thus, when a state official is sued solely as an official, money damages and other retroactive relief are normally unavailable. See *Shields v. Gerhart*, 155 Vt. 141, 152, 582 A.2d 153, 159 (1990) (dismissing § 1983 action for damages brought against state employees in their official capacities).

Nevertheless, the Supreme Court also has held that a state official sued in his or her official capacity for injunctive relief *"would be* a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)) (emphasis added). Moreover, even if a suit for prospective relief implicated prospective expenditures of state funds, that would not be grounds for dismissal. See *id.*; *Kentucky v. Graham*, 473 U.S. at 169 n.18 ("Monetary relief that is 'ancillary' to injunctive relief also is not barred by the Eleventh Amendment."); *Milliken v. Bradley*, 433 U.S. 267, 289, 293–95 (1977) (state ordered to pay $5.8 million to fund a desegregation decree); *Edelman v. Jordan*, 415 U.S. 651, 667–68 (1974) (prospective court orders mandating officials to conduct themselves in certain ways are permissible even if they involve payments from state treasuries).

■ Thus, plaintiffs' right to recover prospective monetary relief under the DIISP does not depend on whether the State

has set aside and maintained a contingency fund for this purpose. If the DIISP were still operating and if plaintiffs satisfactorily established their right to be included in it, they would be entitled to injunctive and declaratory relief—assuming success on the merits herein—that would ensure their future participation. The DIISP expired by its own terms, however, on April 30, 1989, see 1987, No. 200 (Adj. Sess.), § 62, and the Legislature, on June 26, 1991, repealed any remaining vestige of the program. See 1991, No. 79, § 7. Thus, the question becomes whether plaintiffs' claims are now moot.

Ordinarily, "[c]laims for damages or other monetary relief automatically avoid mootness." 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533.3, at 262 (1984); see *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 478 n.1 (1989) (expiration of ordinance requiring those who have contracts with city to subcontract 30% of value of contract to minority businesses does not moot contract bidder's § 1983 claim challenging constitutionality of the ordinance after its bid was refused for failing to meet 30% requirement). Here, a live controversy remains concerning whether plaintiffs suffered monetary loss because of an illegal application of the DIISP.

The federal courts have developed an equitable doctrine to allow funds from statutorily created programs to be paid to deserving plaintiffs even after a program expires, as long as the lawsuit was instituted on or before the expiration date. *West Virginia Ass'n of Community Health Centers v. Heckler*, 734 F.2d 1570, 1576–77 (D.C. Cir. 1984); *Connecticut v. Schweiker*, 684 F.2d 979, 997 (D.C. Cir. 1982); *Jacksonville Port Authority v. Adams*, 556 F.2d 52, 55–57 (D.C. Cir. 1977). Equitable relief is ordinarily limited to funds remaining after the program expires. *West Virginia*, 734 F.2d at 1577.

Here, plaintiffs brought a timely suit, long before the DIISP expired. In their complaint they sought a preliminary injunction; no hearing on the matter was scheduled and plaintiffs thus lost their only opportunity for timely relief. In the federal cases, denial of such preliminary relief to preserve a plaintiff's claim has been found to be an abuse of discretion. *Jacksonville*, 556 F.2d at 58–59. In the instant case, the Legislature reserved a portion of DIISP funds for plaintiffs' claim—apparently securing relief if they prevailed—but, after the budget year ended

without resolution of the lawsuit, dissolved the fund. Under these facts, plaintiffs' claim is not moot.

## II.

■ With respect to the claim against defendants in their individual capacities, plaintiffs contend that defendants are not entitled to qualified immunity. Qualified immunity attaches to public officials who (1) act during the course of their employment and act, or reasonably believe they act, within the scope of their authority; (2) act in good faith; and (3) perform discretionary, as opposed to ministerial, acts. *Murray v. White,* 155 Vt. 621, 627, 587 A.2d 975, 979–80 (1991). Plaintiffs appear to concede the first requirement, but argue that defendants did not act in good faith and performed merely ministerial acts. We conclude, however, that defendants are entitled to qualified immunity.

## A.

■ Plaintiffs argue that, as a matter of law, defendants were not acting in good faith because they continued to reject plaintiffs' applications for inclusion in the program after this lawsuit was initiated. "Good faith exists where an official's acts did not violate clearly established rights of which the official reasonably should have known." *Murray v. White,* 155 Vt. at 630, 587 A.2d at 980 (footnote omitted). Mere initiation of a lawsuit does not create a clearly established right. See *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (an official is not expected to anticipate subsequent legal developments). Whether an official protected by qualified immunity may be held personally liable for allegedly unlawful official actions will generally depend on the "'objective legal reasonableness'" of the actions. *Anderson v. Creighton,* 483 U.S. 635, 639 (1987) (quoting *Harlow,* 457 U.S. at 819). Thus, the test is an objective one, requiring a determination of the objective reasonableness of an official's conduct, as measured by reference to clearly established law. *Harlow,* 457 U.S. at 818. Subjective good faith is thus ordinarily irrelevant. *Anderson v. Creighton,* 483 U.S. at 641. In the instant case, plaintiffs have not shown that defendants violated any clearly established legal rights or that the trial court erred in its determination that defendants acted in objective good faith.

We turn now to the more difficult issue of whether defendants should be denied qualified immunity because their acts were merely "ministerial" in nature.[2]

Plaintiffs' argument is grounded upon *Libercent v. Aldrich*, 149 Vt. 76, 539 A.2d 981 (1987), where we defined "a discretionary duty as one requiring the exercise of judgment in its performance, and a ministerial duty as one where 'nothing is left to discretion—a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist.'" *Id.* at 81, 539 A.2d at 984 (quoting *State v. Howard*, 83 Vt. 6, 14, 74 A. 392, 395 (1909)). Relying on these definitions, plaintiffs argue that the statutory eligibility requirements leave no "discretion" to defendant Allbee. If individuals, such as plaintiffs, are not members of a regional marketing cooperative, they are clearly not eligible for a DIISP subsidy under the statute.[3] As for defendant Hebard, plaintiffs contend that he was required to issue

---

[2] The parties have not addressed the threshold question of whether the common law's discretionary/ministerial distinction applies in the context of a § 1983 action. Without discussion, we assumed in *Murray v. White*, 155 Vt. 621, 627, 587 A.2d 975, 978 (1991), that ministerial duties are not entitled to qualified immunity. Courts are split on this issue, however, with some courts concluding the distinction does not apply to § 1983 actions. *Coleman v. Frantz*, 754 F.2d 719, 728 (7th Cir. 1985); *Withers v. Levine*, 615 F.2d 158, 163 (4th Cir.), *cert. denied*, 449 U.S. 849 (1980). Other courts hold that it does apply. *Saul v. Larsen*, 847 F.2d 573, 576 (9th Cir. 1988); *Jordan v. Sinsheimer*, 403 Mass. 586, 589, 531 N.E.2d 574, 577 (1988).

The United States Supreme Court has not definitively resolved the issue. In the absence of clear authority to the contrary, we reaffirm our rule that, as a general proposition, the common law's discretionary/ministerial distinction does apply to qualified immunity determinations. See *Murray*, 155 Vt. at 629, 587 A.2d at 979–80.

[3] 6 V.S.A. § 2994 ("Eligibility standards") provided:

Any dairy farmer who is a member of a regional marketing cooperative that encompasses the state of Vermont, including but not limited to the Regional Cooperative Marketing Agency, that obtains a market price for the participating producers' product that is above the federal market order price shall be eligible for payment under this chapter. All dairy farmers shall be eligible for payment if no such organization is in operation.

The commissioner of agriculture, or his designee, was charged with reviewing applications for the DIISP. 6 V.S.A. § 2993; see *id.* § 2992(1). Plaintiffs make no argument that they were incorrectly denied eligibility under this section. Rather, they have expressly refused to join a regional marketing cooperative.

checks to individuals certified by defendant Allbee as qualifying for the subsidy, but only to those individuals.[4] Thus, in plaintiffs' view, defendant Hebard merely drew up, signed, and mailed checks to specified payees. In short, plaintiffs contend defendants should be denied qualified immunity because each one merely executed a simple and definite ministerial duty commanded by law.

■ The established definitions for "discretionary duty" and "ministerial duty" lend considerable force to plaintiffs' argument. We reject their argument, however, and recognize an exception to the general rule that only officers performing discretionary duties are entitled to qualified immunity. We hold that officers who, in objective good faith, obey a simple and definite legal command established by statute while acting, or reasonably believing they are acting, within the scope of their employment and authority, are qualifiedly immune from a suit that is grounded upon conduct prescribed by that statute.[5] As explained below, affording qualified immunity in these circumstances is consistent with generally accepted tort principles and with the purpose of the doctrine. See *Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (in determining immunity questions in § 1983 action, relevant factors are the scope of immunity at common law at the time § 1983 was enacted and the purposes of § 1983).

First, § 1983 actions are "to be read 'in harmony with general principles of tort immunities and defenses rather than in derogation of them.'" *Burns v. Reed*, 500 U.S. 478, 484, 111 S. Ct. 1934, 1938 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976)). While the precise contours of the common law need not be slavishly followed, it is appropriate to look to the common law and other history for guidance. *Id.* at 493, 111 S. Ct. at 1943.

---

[4] Defendant Hebard has retired from his position as state treasurer and defendant Allbee is no longer commissioner of agriculture. The claims against them remain live controversies, however, since they occupied their official positions during the period in controversy.

[5] Such a rule would not protect malfeasance. Rather, this rule is designed to protect the official who performs a legally commanded ministerial task, provided no clearly established rights are violated.

Such an exception is amply supported by established principles of tort immunity law. Both Prosser and Keeton on The Law of Torts (5th ed. 1984) and F. Harper, F. James & O. Gray, The Law of Torts (2d ed. 1986) express an exception to the ministerial-act rule for the officer who obeys a valid court order or statute. Prosser and Keeton, *supra*, § 132, at 1066 ("In addition to whatever immunity is or is not available to the officer simply because of official status, there is a privilege to obey the command of judicial process fair on its face as well as the command of a valid statute.");[6] Harper, James & Gray, *supra*, § 29.10, at 669 (no liability for ministerial action where it is "justifiable as commanded by valid statute, order, etc."). Common law and Vermont precedent both similarly provide that an officer is privileged to execute a court order valid on its face. See *California v. Acevedo*, 500 U.S. 565, 581, 111 S. Ct. 1982, 1992 (1991) (Scalia, J., concurring) (noting that absolute immunity existed at common law for officer who acted pursuant to a proper warrant); *Horton v. Chamberlin*, 152 Vt. 351, 353, 566 A.2d 953, 954 (1989), *Casselini v. Booth*, 77 Vt. 255, 256, 59 A. 833, 833 (1905); *Gage v. Barnes*, 11 Vt. 195, 196 (1839); *Pierson v. Gale*, 8 Vt. 509, 511 (1836). Other courts have also indicated that immunity from personal liability exists where the official obeys an apparently valid legal command. See *United States v. Illinois Bell Tel. Co.*, 531 F.2d 809, 815 (7th Cir. 1976); *District of Columbia v. Thompson*, 570 A.2d 277, 293 (D.C. App. 1990) (recognizing immunity for mandatory duties);[7] *Elzey v. Archer*, 500 N.E.2d

---

[6] Prosser and Keeton further explain:

If the officer follows a writ which there is no reason to question, there is an immunity even in the face of personal malice, since regardless of mental state the officer is only complying with a legal duty. The problem in cases of this sort has often turned on the question whether the officer is privileged when he relies on a judicial order issued without jurisdiction or a statute that is unconstitutional. . . . [T]he older cases tended to hold the officer liable for technical defects in the command under which he justified his action, while the more recent ones tend to excuse him unless there was reason to doubt the validity of the order [or] statute.

Section 132, at 1066 (footnotes omitted).

[7] This case was reheard, 593 A.2d 621 (D.C. App. 1991), reversed in part and affirmed in part, on other grounds. In *Moss v. Stockard*, 580 A.2d 1011, 1018 n.12 (D.C. App. 1990), the court explained that the rehearing in *Thompson* involves issues of exhaustion of administrative remedies and notes that "the

1253, 1256 (Ind. App. 1986) (arresting officer immune where arrest warrant was legally defective but appeared valid on its face), *cert. denied*, 484 U.S. 1008 (1988); see also *Barr v. Matteo*, 360 U.S. 564, 575 (1959) ("same considerations which underlie the recognition of the privilege as to acts done in connection with a mandatory duty apply with equal force to discretionary acts"). Further, it would be incongruous for the officer who competently executes a mandatory duty to be held liable while the creator of the duty is absolutely immune. See *Valdez v. City of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989).

Second, such an exception serves the purposes of qualified immunity. The doctrine strikes an accommodation between competing interests. While personal liability "may offer the only realistic avenue for vindication of constitutional guarantees," *Harlow*, 457 U.S. at 814, substantial social costs are attendant, including the expense and distraction of the litigation and deterrence from going into public service. *Id.*; *Levinsky v. Diamond*, 151 Vt. 178, 199, 559 A.2d 1073, 1087 (1989), *overruled on other grounds, Muzzy v. State*, 155 Vt. 279, 280 n.*, 583 A.2d 82, 83 n.* (1990). "In this balance, officials should fear suit only where they reasonably should know that suit is warranted, i.e., where the unlawfulness of their acts is apparent." *Murray*, 155 Vt. at 632, 587 A.2d at 981. "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

If executive officials who have acted in accordance with a simple and definite statutory command can be sued personally, not only will the competent be unprotected from litigation, but additionally, "we are indeed likely to breed a race of do-nothing officials." Harper, James & Gray, *supra*, § 29.10, at 678; see also *Forrester v. White*, 484 U.S. 219, 223 (1988) ("the threat of liability can create perverse incentives that operate to *inhibit* officials in the proper performance of their duties") (emphasis in original); *Harlow v. Fitzgerald*, 457 U.S. at 814 ("there is the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or most irresponsible [public officials], in the

---

immunity analysis in *Thompson* is sound and that we would adopt it even if the *Thompson* opinion were vacated."

unflinching discharge of their duties'") (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied*, 339 U.S. 949 (1950)). An official charged with implementing an apparently valid statute that establishes a simple and definite duty should not face the dilemma of shirking his or her duty or facing a likely lawsuit. As Chief Justice Warren explained in a slightly different context:

A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does. Although the matter is not entirely free from doubt, the same consideration would seem to require excusing him from liability for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional, on its face or as applied.

*Pierson v. Ray*, 386 U.S. 547, 555 (1967). *Pierson* involved a suit against police officers who arrested without a warrant certain ministers who had entered a "whites only" bathroom and cafeteria. The officers claimed that they arrested the ministers to prevent violence. The Court held that the common-law defense of good faith and probable cause was available to the officers in the § 1983 action. *Id.* at 557.

    In the instant case, defendants, in the scope of their employment, competently executed a simple and definite duty mandated by a statute that violated none of plaintiffs' clearly established rights. For this, plaintiffs sued them personally. Exposure to personal liability in these circumstances tends to "detract from the rule of law instead of contributing to it." *Forrester v. White*, 484 U.S. at 223. Because affording defendants qualified immunity is consistent with the doctrine's purposes and with principles of tort immunity law, we affirm the trial court insofar as it dismissed the suit against defendants in their individual capacities.

*Plaintiffs' claim against defendants in their official capacities is reversed and remanded; the balance of the judgment is affirmed.*