# All Cycle, Inc. v. Chittenden Solid Waste District

[670 A.2d 800]

No. 94-511

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed October 20, 1995

Motion for Reargument Denied December 14, 1995

*Christopher D. Roy* and *Marc B. Heath* of *Downs, Rachlin & Martin,* Burlington, for Plaintiff-Appellant.

*John L. Franco, Jr.,* of *McNeil, Leddy & Sheahan,* Burlington, for Defendant-Appellee.

**Allen, C.J.** Plaintiff All Cycle, Inc. appeals from the Chittenden Superior Court's dismissal of its three-count complaint, which alleged that the defendant Chittenden Solid Waste District's waste manage-ment scheme violated the Commerce Clause of the United States Constitution. Plaintiff requested injunctive, declaratory, and monetary relief. We reverse, except for the court's dismissal of injunctive relief in Count I, which we affirm.

Defendant is a union municipal district organized under 24 V.S.A. chapter 121. Pursuant to the Solid Waste Management Ordinance, enacted by defendant on June 24, 1992, all waste haulers operating in the District must obtain a license that requires haulers to comply with all ordinances and regulations enacted by the District. Violations of the licensing conditions may result in civil or criminal penalties. The Solid Waste Management Plan, adopted by defendant on March 24, 1993 and subsequently approved by the state, required all licensees to dispose of solid waste collected in the District at a single designated landfill. This type of regulatory scheme is commonly called flow control. From January 2, 1993 through the commencement of this litigation, the District had designated only the landfill on Redmond Road in Williston for disposal of District waste. The District owned and operated the Redmond Road landfill and charged haulers who disposed of waste at the facility a processing or "tipping" fee of $74.20 per ton.

On June 30, 1993 the District enacted the Solid Waste Management Fee Ordinance, which taxed all solid waste collected in the District on the basis of weight. The Fee Ordinance became effective on August 30. The District assessed a management fee at $17.60 per ton and included it in the Redmond Road landfill's per ton tipping fee. The Fee Ordinance required haulers to weigh their loads, using only approved scales, both immediately before and after disposing of their loads. The District owns three scales, the one at the entrance to the Redmond Road landfill and two others, one in South Burlington and the other in Williston. The parties dispute whether use of the scales, other than the one at the Redmond Road landfill, was feasible while flow control was in effect. The District alleged in its affidavits that procedures exist for obtaining approval for the use of scales other than those owned by the District.

On May 16, 1994, in *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 391-93, 114 S. Ct. 1677, 1682-83 (1994), the United States Supreme Court held unconstitutional a flow control scheme similar to the District's Waste Plan. On June 7, 1994, the District responded to

the *Carbone* decision by issuing draft amendments to its Waste Plan which said that *Carbone* would "mak[e] it difficult to require private haulers who serve District member municipalities to use the District transfer station and the designated disposal facility."

Plaintiff filed its complaint on June 8, 1994, alleging that the District's waste management scheme was unconstitutional and requesting damages under 42 U.S.C. § 1983. According to plaintiff, the Waste Plan and Fee Ordinance violated the Commerce Clause of the United States Constitution, which prohibits states from discriminating against or improperly burdening interstate commerce. Count I of the complaint sought injunctive and declaratory relief with regard to defendant's Waste Plan. Count II sought injunctive and declaratory relief with regard to the defendant's collection of the management fee, which plaintiff alleged was unconstitutional whether it was collected in conjunction with or independently of the Waste Plan. Count III sought monetary damages under 42 U.S.C. § 1983, calculated as a refund of the allegedly excessive tipping fees that resulted from the District's landfill monopoly and the management fees that were collected pursuant to the Fee Ordinance. Plaintiff also presented a motion for class certification pursuant to V.R.C.P. 23(a), in which it sought to represent a class of approximately twenty-five haulers licensed in the District. On June 22, the District Board formally ratified the District manager's decision to suspend enforcement of flow control until Congressional authorization of flow control regulation by the states.

Defendant moved to dismiss, arguing that the court lacked subject matter jurisdiction under V.R.C.P. 12(b)(1) because Counts I and II were moot. Defendant also argued that Counts II and III failed to state a cause of action and should be dismissed under V.R.C.P. 12(b)(6). Because affidavits had been submitted with the complaint and defendant's motion, the superior court informed the parties that it would treat the motion to dismiss as one for summary judgment.

Prior to the scheduled hearing on defendant's motion, plaintiff filed a request for a temporary restraining order (TRO). In deciding plaintiff's request for a TRO, the superior court noted that defendant had committed to suspend enforcement of its flow control scheme pending this litigation and ordered defendant to publicize its nonenforcement policy to the town and waste haulers within its jurisdiction. The court otherwise denied plaintiff's request for a TRO. On August 9, 1994, the court dismissed without prejudice all counts of plaintiff's complaint.

Because the court treated defendant's motion to dismiss as one for summary judgment, we review its decision by applying the legal standards developed under V.R.C.P. 56. *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 520, 496 A.2d 154, 157 (1985). We review a motion for summary judgment under the same standard as the trial court: summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c). In making this determination, we regard as true all allegations of the nonmoving party that are supported by admissible evidence, and we also give the nonmoving party the benefit of all reasonable doubts and inferences. *Messier v. Metropolitan Life Ins. Co.*, 154 Vt. 406, 409, 578 A.2d 98, 100 (1990).

Because the superior court dismissed all counts and requests for relief in plaintiff's complaint, we address each count and each request for relief individually. Plaintiff also offered two theories for its claim in Count II, and the superior court dismissed Count II under both theories. Therefore, in analyzing Count II, we also consider both of plaintiff's theories.[1]

## Count I - Flow Control

We first must determine whether the superior court properly granted summary judgment to defendant on the ground that plaintiff's request for an injunction in Count I was moot. The central question of all mootness problems is "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." 13A C. Wright, et al., Federal Practice & Procedure § 3533, at 212 (1984); see *Doria v. University of Vermont*, 156 Vt. 114, 117, 589 A.2d 317, 319 (1991) (issues become moot when they are no longer live or parties lack legally cognizable interest in outcome). In *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199 (1968), the Supreme Court explained that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled

---

[1] In a motion filed with this Court, on which we reserved decision until our determination of the merits, defendant argued that this appeal should be dismissed because plaintiff lacks standing to seek prospective relief. Defendant made its request because plaintiff, All Cycle, Inc., allegedly sold its Chittenden County solid waste business to All Cycle Waste, Inc. in the summer of 1994. We do not address defendant's argument that plaintiff lacks standing because it is an issue not raised first before the superior court. *In re Johnston*, 145 Vt. 318, 321, 488 A.2d 750, 752 (1985).

to leave '[t]he defendant free . . . to return to his old ways.'" *Id.* at 203 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). The Court continued, however, by noting that "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*; see also *W.T. Grant Co.*, 345 U.S. at 633 (case moot if defendant meets heavy burden of showing there is no reasonable expectation that wrong will be repeated).

Defendant asserted that plaintiff's request for injunctive relief in Count I was no longer justiciable because defendant had committed not to enforce the disputed flow control scheme and had communicated that commitment to the haulers in the District. In support of its motion, defendant submitted the affidavits of Norman Blais, the District Grand Juror, and Fred Moody, the District General Manager. These affiants swore that, as of May 23, 1994, they had decided not to enforce the contested flow control scheme unless and until Congress passed legislation authorizing flow control regulation by the states. In addition to these affidavits, defendant pointed to the District Board's ratification of Messrs. Blais and Moody's decision at its June 22, 1994 meeting as an indication that there was no reasonable expectation that the flow control ordinance would be enforced in the future. Thus, defendant contended that there was no genuine issue of fact regarding the justiciability of injunctive relief in Count I and that it was entitled to dismissal under the mootness doctrine.

Plaintiff argued that the request for injunctive relief in Count I presented a live controversy because defendant was currently in the process of amending its ordinances and might reenact aspects of the currently unenforced flow control scheme. It also argued that defendant's commitment not to enforce flow control was ineffective because "flow control" remained undefined. Plaintiff did not, however, submit any evidence which would have presented a genuine issue of fact regarding defendant's nonenforcement commitment. Plaintiff's argument that defendant might surreptitiously reenact flow control did not create a genuine issue of fact in the absence of evidence that the defendant was indeed contemplating such action. Plaintiff did not present evidence of any of the factors which create a reasonable expectation of renewed enforcement by the District — warnings by officials that they might resume enforcement in the future, continued assertions of legality despite nonenforcement, and dilatory nonenforcement. Wright, *supra*, § 3533.7, at 356-57. Moreover, plaintiff did not submit evidence showing that a dispute existed regarding the

meaning of flow control. Consequently, plaintiff did not meet its burden of showing that there were disputed facts on the issue of whether there exists a reasonable expectation that flow control would be enforced again. Summary judgment on the issue of injunctive relief in Count I was therefore proper.

The appropriateness of summary judgment for defendant on plaintiff's request for declaratory relief in Count I actually involved two issues: (1) whether the District's flow control scheme, as it operated up until voluntary cessation, was unconstitutional, and (2) whether declaratory relief was appropriate despite the mooted request for injunctive relief. "The purpose of a declaratory judgment is to 'provide a declaration of the rights, status, and other legal relations of parties to an actual or justiciable controversy.'" *Doria,* 156 Vt. at 117, 589 A.2d at 318 (quoting *Robtoy v. City of St. Albans,* 132 Vt. 503, 504, 312 A.2d 45, 46 (1974)). The two issues involved here establish the parties' rights both prospectively and retrospectively and correspond to the dual purposes of declaratory judgments. See, e.g., *Wolff v. McDonnell,* 418 U.S. 539, 554-55 (1974) (request for injunction dismissed but declaratory judgment not barred because predicate to damages award — retrospective purpose); *Halkin v. Helms,* 690 F.2d 977, 1007 (D.C. Cir. 1982) (where parties are involved in ongoing relationship that may present opportunity for future disagreement, declaratory judgment may be appropriate — prospective purpose).

We are hampered in our review of the superior court's determination of these issues by its failure to address plaintiff's request for declaratory relief in Count I. Although the court determined that plaintiff's request for injunctive relief in Count I was no longer justiciable, its order fails to address the justiciability of plaintiff's request for declaratory relief in Count I. We cannot assume that the court made the same determination on declaratory relief as it did with injunctive relief because the two forms of relief demand separate inquiries. See *Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 121-22 (1974) (injunctive relief was mooted, but request for declaratory relief remained viable because parties could have retained sufficient interests and injury to justify award of declaratory relief).

Nevertheless, plaintiff's request for declaratory relief was not moot because of the retrospective purpose of a declaratory judgment. A declaration on the constitutionality of government conduct is a

predicate to the award of damages in a § 1983 claim. See 12 V.S.A. § 4718 ("Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper."); see also *Wolff*, 418 U.S. at 554-55 (despite dismissal of request for injunctive relief, prisoner's request for declaratory judgment was not barred in § 1983 suit because declaratory judgment was predicate to damages award). Moreover, it is well established that claims for damages or other monetary relief automatically avoid mootness. *Heleba v. Allbee*, 160 Vt. 283, 287, 628 A.2d 1237, 1239 (1992), *cert. denied*, 510 U.S. 947, 114 S. Ct. 388 (1993). Because Count III seeks damages under 42 U.S.C. § 1983 for the past constitutional violations alleged in Count I, the request for a declaratory judgment on the constitutionality of the defendant's flow control scheme presents a live controversy.

Count II - Constitutionality of Fee Ordinance

Plaintiff argues that the superior court erred in dismissing Count II of its complaint. We agree. Although it is not clear from the court's August 9 order whether Count II was decided under the Commerce Clause or under the mootness doctrine, the court erred under either approach.

In its complaint, plaintiff presented two theories supporting its claim that defendant's procedure for collecting the management fee violated the Commerce Clause. First, it argued that the weighing procedure depended on the unconstitutional flow control scheme. Second, it argued that, even if independent of the flow control scheme, the weighing procedure violated the Commerce Clause because it imposed an excessive burden on interstate commerce.

In its order, the superior court noted that plaintiff had not presented any evidence in its affidavits to counter defendant's assertion that the management fee scheme operated independently of the flow control ordinance. The court may thereby have concluded that the defendant was entitled to summary judgment under the Commerce Clause on plaintiff's first theory. The court further determined that there were no genuine issues of material fact regarding the burden on interstate commerce that resulted from the District's weighing procedures. The court may thereby have concluded that defendant was entitled to summary judgment under the Commerce Clause on plaintiff's second theory. The court also concluded, however, that the complaint did not "assert a justiciable dispute as to which there is a genuine issue of material facts for trial," and dismissed Count II without prejudice. The court thus implied

that Count II was moot. Because the superior court did not clearly articulate its reason for dismissing Count II, we consider both the Commerce Clause and mootness doctrines.

■ The superior court properly granted summary judgment to defendant on plaintiff's request for injunctive and declaratory relief under plaintiff's first theory. Defendant had satisfied its burden by submitting affidavits in which the affiants stated that, while flow control was no longer enforced, the management fee continued to be collected. This assertion supported the inference that flow control and the management fee operated independently. Defendant also submitted copies of the ordinance itself as evidence that the Waste Plan and the Fee Ordinance were severable. Plaintiff did not submit any evidence that would have created a genuine issue of material fact regarding the independence of the two schemes. Plaintiff did not satisfy its burden, and the court properly granted summary judgment on plaintiff's first theory.

■ The court erred, however, by granting summary judgment to defendant on plaintiff's request for both declaratory and injunctive relief under plaintiff's second theory. Plaintiff alleged in its complaint that "[i]f [defendant] were to enforce the Fee Ordinance independent of its unconstitutional flow control scheme, the Management Tax as currently devised would still impose a burden on interstate commerce that is clearly excessive in relation to the putative local benefits."

■ The controlling Commerce Clause analysis requires the court to engage in a factually intensive inquiry. The court must determine (1) the putative local benefit of the challenged law, (2) the burden imposed on interstate commerce by the law, (3) whether this burden is clearly excessive in relation to the local benefits, and (4) whether the local benefit can be promoted with a lesser impact on interstate commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Defendant alleged in its affidavits that it contemplated allowing haulers to use its scales in South Burlington and Williston, as well as privately owned scales approved by the District. Plaintiff submitted the affidavit of its president, Richard Dooley, alleging that it was not feasible to use scales other than the one on Redmond Road while flow control was enforced. Dooley further alleged that, even if members of the yet-uncertified plaintiff class were allowed to dispose of waste outside the District, using the District's two other scales in South Burlington and Williston would increase transportation costs and impose a logistical burden on haulers. Plaintiff argues that requiring

haulers to use the District's three scales is a de facto requirement that haulers use the Redmond Road landfill because the proximity of the three District scales to the Redmond Road landfill makes disposal elsewhere economically infeasible. A factual dispute clearly exists regarding whether the weighing procedure, as it existed under flow control and as it currently exists, unconstitutionally burdens inter-state commerce.[2] The court therefore erred in dismissing Count II because plaintiff's affidavits create a dispute regarding whether it would have been economically feasible to use scales other than the one on Redmond Road while flow control was enforced and whether the use of the District's other scales would be a burden on interstate commerce.

■ Defendant argues that the court correctly found that the haulers may have trucks weighed at alternative sites. In its order, the court merely stated that defendant had met its burden on the existence of alternative sites and that plaintiff did not present evidence of a factual dispute. Nevertheless, plaintiff presented evidence disputing whether it was feasible to use these other scales and whether their use unconstitutionally burdened interstate commerce. A finding by the court on these issues would have been improper in the context of a motion for summary judgment. See *Crosby v. Great Atlantic & Pacific Tea Co.*, 143 Vt. 537, 539, 468 A.2d 567, 569 (1983) (in context of summary judgment, findings of fact should merely be precise statement of uncontroverted fact). Although the existence of alternative scales was undisputed, genuine issues of fact exist regarding the burden on interstate commerce caused by the use of the alternative scales.

■ ■ Because the court dismissed Count II without prejudice and concluded that it was not justiciable, we also must review the trial court's decision under the mootness doctrine, if that was indeed the basis for its decision. A claim is moot if it no longer presents a live controversy and the parties have no legally cognizable interest in the outcome. *Doria*, 156 Vt. at 117, 589 A.2d at 319. Because it is

---

[2] In its brief, defendant highlights the factual issues that exist under plaintiff's second theory: "Was All-Cycle *itself* so inconvenienced? Had *it* chosen an alternative disposal . . . [site at] some location *in fact more convenient* . . . than the District scales at Redmond Road? Did the District *in fact* refuse All-Cycle permission to [use] the weigh scales of such facility? Were its transportation costs materially increased to such an extent as to *in fact* amount to discrimination against interstate commerce under the balancing test of *Pike* . . . ?"

undisputed that the District continues to collect the management fee, plaintiff retains a legal interest in a determination of the constitutionality of the weighing procedures used for its collection. Plaintiff would also be eligible for prospective relief if those procedures are found to be unconstitutional. Moreover, a claim for damages from a past constitutional violation automatically avoids a mootness determination. *Heleba*, 160 Vt. at 287, 628 A.2d at 1239. Here, plaintiff predicates its claim for damages in Count III on a determination of the constitutionality of the weighing procedures as alleged in Count II. Therefore, the trial court erred if it dismissed Count II of plaintiff's complaint under the mootness doctrine.

### Count III - Damages under § 1983

Plaintiff also argues that the court erred when it dismissed Count III. We agree. The court dismissed the request for damages in Count III because it had dismissed Counts I and II, upon which the claim for damages was predicated. Having reversed the superior court's dismissal of Counts I and II, we must also reverse its dismissal of Count III.

*Reversed, except for dismissal of request for injunction in Count I, which is affirmed.*