*Perez v. Touchette*, 658-8-19 Cncv (Hoar, Jr., J., Jan. 27, 2021)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]\

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street, PO Box 187
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 658-8-19 Cncv

---

**Perez vs. Touchette et al**

---

## ENTRY REGARDING MOTION

Title:      Suggestion of Mootness (Motion: 6); Memorandum in Opposition; Reply to Memo in Opposition

Filer:      Jared C. Bianchi; Annemarie Mannhardt; Jared C. Bianchi

Filed Date:      November 11, 2020; November 20, 2020; December 02, 2020

In this case, Petitioner Maria Perez seeks injunctive and declaratory relief against the Commissioner of the Vermont Department of Corrections ("DOC"), arising out of alleged violations of her rights that occurred at the hands of staff at Chittenden Regional Correctional Facility ("CRCF") when she was an inmate at that facility. Recently, she was released on furlough; while she remains under DOC supervision, she is no longer in custody, and so not subject to any supervision or control by CRCF staff. DOC therefore moves to dismiss her claims as moot. The court denies the motion.

At the outset, it bears observing that Ms. Perez's allegations more than sufficiently state a claim for relief—in fact, the case has already survived a motion to dismiss. Briefly, she alleges that she was tricked into consuming part of a pot brownie by a correctional officer at CRCF; when she told the officer of her intent to report the incident, the officer tried to bribe her. Ms. Perez then reported both the initial incident and the subsequent attempted bribery to the facility superintendent, who agreed to move Ms. Perez to another unit and assure that she would have no further contact with the officer. Notwithstanding this assurance, only a few days later, the officer approached Ms. Perez in her cell, took her to another part of the facility, and performed a strip search on her.

When Ms. Perez grieved these actions, the CRCF Assistant Superintendent investigated and sustained the grievance, finding, "Perez was told there would be no contact and alleged staff perpetrator performed strip search. CPSS staff have been notified and all are aware." The facility

Superintendent affirmed this finding and recommendation. Subsequently, however, without notice to Ms. Perez and while her grievance was still pending with the Commissioner's office, the Superintendent lifted the contact restriction. Less than a week later, a Corrections Executive sustained the grievance, concluding, "Supervisory staff are aware of the situation to ensure this is prevented in the future." Nevertheless, DOC continued to allow the officer to have contact with Ms. Perez, including allowing the officer to subject her to strip searches. DOC also refused to establish a safety plan to protect Ms. Perez from further misconduct by the officer.

At this stage of the proceedings, the court treats all these allegations as true. *Kane v. Lamothe*, 2007 VT 91, ¶ 2, 182 Vt. 241. Indeed, DOC does not controvert any of them, and many appear to be beyond legitimate dispute. Instead, DOC points out that on July 1, 2020, Ms. Perez was released on furlough, and so is no longer subject to the behaviors of which she complains. Ms. Perez responds that as she remains on furlough until she reaches her maximum sentence date, her reincarceration is more than hypothetical, and that in any event, she retains a legitimate interest in effecting the relief sought in her amended petition. Specifically, she asks for relief in the form of mandamus, praying that the court:

> 3) Grant declaratory relief instructing Defendants that retaliatory strip searches are unlawful; 4) Grant injunctive and corresponding declaratory relief barring contact between [her] and [the officer]; [and] 5) Grant injunctive and corresponding declaratory relief compelling the DOC to establish a policy for the prevention and investigation of allegations of staff misconduct not otherwise covered by DOC Directive #409.09 (PREA policy).

Am. Pet'n at 7.

Ms. Perez's allegations are very troubling; if proven, they suggest a level of indifference that could easily support an injunctive remedy.[1] The problem, according to DOC, is that since her release on furlough, Ms. Perez no longer has a "cognizable interest in the outcome." Def.'s Suggestion of Mootness (hereinafter, "Mot. To Dismiss") at 1 (quoting *In re LeClair*, 2011 VT

---

[1] In its reply, DOC suggests that one of Ms. Perez's prayers for relief—her request that the court compel DOC to establish a policy for prevention and investigation of allegations of staff misconduct—is not a proper subject of injunctive relief. Def.'s Reply Mem. in Support of Mootness at 5. This suggestion, however, is not an argument in favor of mootness. Rather, it addresses the shape any injunction may take. At least on a motion premised on mootness, the argument is inapposite. Moreover, DOC has raised this argument for the first time in its reply, denying both Ms. Perez the opportunity to respond and the court the benefit of the sharpened focus that follows effective advocacy on both sides of a question Accordingly, the court leaves this question for later resolution.

63, ¶ 7, 190 Vt. 535).[2] While she clearly had such an interest when the case was filed, now any future harm that this case might seek to prevent can occur only if Ms. Perez is reincarcerated. While that remains within the realm of the possible, even the statistics she cites in her Opposition fall far short of suggesting an injury that is "actual or imminent." *See Anderson v. State*, 168 Vt. 641, 644 (1998) ("The requirement of an actual or justiciable controversy means that the consequences of the dispute must be so set forth that the court can see that they are not based upon fear or anticipation but are reasonably to be expected.") (quotation omitted). Thus, she may no longer have standing to assert a claim for prospective relief. *See Friends of the Earth, Inc. v. Laidlaw Environmental Svcs., Inc.*, 528 U.S. 167, 180 (2000) (to satisfy Article III standing requirements, plaintiff must show injury "that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"); *see also In re Boocock,* 150 Vt. 422, 424 (1988) ("Where future harm is at issue, the existence of an actual controversy 'turns on whether the plaintiff is suffering the threat of actual injury to a protected legal interest, or is merely speculating about the impact of some generalized grievance.' ") (quoting *Town of Cavendish v. Vermont Pub. Power Supply Auth.,* 141 Vt. 144, 147 (1982)). Here, the injury Ms. Perez seeks to avoid can occur only if she is reincarcerated.

In her Opposition, Ms. Perez suggests first that her "incarcerative status is only potentially relevant to the second of [the] three remedies" she seeks. Plaintiff's Opp'n to Defendant's Mot. to Dismiss at 2. This, of course, is true only to the extent that Ms. Perez seeks a remedy on behalf of others who remain incarcerated; now on the "outside," she has no direct, personal interest in what occurs in the prison. This is not a class action, however—and as she is no longer incarcerated, it is doubtful that Ms. Perez could properly qualify as a class representative, *see* V.R.C.P. 23(a)(3) & (4)—so she must be arguing instead for some kind of public interest exception to the mootness doctrine. Our Supreme Court, however, has repeatedly rejected any such exception. *See, e.g., In re Moriarty*, 156 Vt. 160, 164 (1991); *Sullivan v. Menard*, 2019 VT 76, ¶ 10, ___ Vt. ___.

This leaves Ms. Perez's suggestion that to invoke the mootness doctrine, DOC must "show that her reincarceration 'cannot reasonably be expected to recur.' " Opp'n at 2 (quoting

---

[2] Actually, DOC cites "*[i]d.*," but the prior citation is not to a case but to Ms. Perez's dismissal of another case due to her release. A careful Westlaw search reveals that the source of DOC's quoted language is in fact the *LeClair* case.

Entry Regarding Motion
658-8-19 Cncv Perez vs. Touchette et al

Page **3** of **6**

*Laidlaw*, 528 U.S. at 170).[3] She thereby invokes the "voluntary cessation" exception to the mootness doctrine. *See Laidlaw*, 528 U.S. at 189 ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. [I]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways.") (quotations and citation omitted). DOC responds that our Court "has expressly rejected the use of [*Laidlaw*] to shift the burden of mootness in contexts exceedingly similar to this." Def.'s Reply Memo. at1–2 (citing *Sullivan*, 2019 VT 76, ¶ 7). The similarity, however, is superficial. In *Sullivan*, an inmate challenged DOC's decision to deny him reintegration furlough. *Id.* ¶ 1. While the case was pending before the Supreme Court, he "reached his minimum sentence  . . . and was paroled." *Id.* ¶ 4. It was not his release on parole, however, that mooted the case; instead, it was the fact that, having reached his minimum, he was no longer eligible for reintegration furlough. *Id.* ¶ 6 (citing 28 V.S.A. § 808c(a)(1)). In response to the petitioner's *Laidlaw* argument, the court observed: "DOC indicates no intent to disavow or amend its allegedly unlawful rule; rather, petitioner cannot be granted reintegration furlough with respect to his current sentence because—independent of any DOC action—his minimum has expired." *Id.* ¶ 7. Thus, the Court continued, "[t]his is not a voluntary-compliance case." *Id.*

Here, in contrast, the event that DOC contends moots the case is Ms. Perez's release on furlough. That was entirely a matter of DOC's discretion. *See* 28 V.S.A. § 723(a) (DOC "may release [an inmate] from a correctional facility to participate in a reentry program while serving the remaining sentence in the community"). While DOC thereby fell short of "disavow[ing] or amend[ing] its allegedly unlawful" practices, it was nevertheless DOC's voluntary action that had the practical effect of taking Ms. Perez out of harm's way. Equally, in contrast to the situation in *Sullivan*, where no voluntary action by DOC could put the petitioner in a place where he was again eligible for reintegration furlough, here, DOC retains discretion to revoke furlough and place Ms. Perez in the very situation of which she complains. *See Conway v. Cumming*, 161 Vt. 113, 119 (1993) ("The Commissioner terminated plaintiff's furlough status as a matter within his discretion."). In short, contrary to DOC's assertion, the context in *Sullivan* was not "exceedingly similar" to this; rather, in critical respects, it was strikingly dissimilar. DOC's

---

[3] While Ms. Perez mistakenly cites the reporter's syllabus, the quoted language appears also in the body of the opinion. *Id.* at 189.

discretionary decision to release Ms. Perez on furlough was tantamount to a "voluntary cessation" of the practices of which she complains.

While the "voluntary cessation" doctrine is well established in federal law, our Supreme Court has not yet either adopted or rejected it. *Sullivan* is the only decision that even mentions *Laidlaw*, and the limited context in which that Court discussed the "voluntary cessation" doctrine offers no insight into whether the Court, in the right case, would recognize it. The only other case this court has found discussing the "voluntary cessation" doctrine is *All Cycle, Inc. v. Chittenden Solid Waste Dist.*, where the Court again stopped short of an outright endorsement of the doctrine. 164 Vt. 428 (1995). In that case, however, the Court's discussion of the doctrine strongly suggests that the Court approved of it. *See id.* at 432–33. Indeed, there, the Court affirmed a grant of summary judgment on mootness grounds where the defendant submitted evidence establishing that "[it] had committed not to enforce the disputed . . . scheme and had communicated that commitment to the [entities affected by the scheme]," *id.* at 433, and "plaintiff did not meet its burden of showing that there were disputed facts on the issue of whether there exists a reasonable expectation that [the scheme] would be enforced again," *id.* at 434. Effectively, then, the Court determined that the defendant had met its Rule 56(c) burden under the "voluntary cessation" doctrine, while the plaintiff had failed to meet its burden of properly controverting the defendant's showing. This seems at least a tacit endorsement of the doctrine. This court notes also that the "voluntary cessation" doctrine has earned wide acceptance in other states. *See, e.g., Boisvert v. Gavis*, 210 A.3d 1, 18–19 (Conn. 2019); *Stano v. Pryor*, 372 P.3d 427, 430–31 (Kan. Ct. App. 2016); *Cat's Meow, Inc. v. City of New Orleans Through Dep't of Fin.*, 720 So. 2d 1186, 1194 (La. 1998); *Havre Daily News, LLC v. City of Havre*, 142 P.3d 864, 875 (Mont. 2006); *Tibert v. City of Minto*, 679 N.W.2d 440, 444 (N.D. 2004); *Puerto v. Doar*, 34 N.Y.S.3d 409, 415 (N.Y. App. Div. 2016); *but see Guy v. Wyoming Dep't of Corr. by & through Lampert*, 444 P.3d 652, 657 (Wyo. 2019) (declining to adopt "voluntary cessation" doctrine in Wyoming). The court therefore concludes that our Supreme Court, in the right case, would adopt the doctrine.

The facts recited above suggest strongly that this is the right case. Ms. Perez's allegations—which, again, must be taken as true at this stage of the proceedings—make clear that even after acknowledging that what she had experienced was wrong and committing to

Entry Regarding Motion
658-8-19 Cncv Perez vs. Touchette et al

Page **5** of **6**

prevent it, DOC failed to make good on its word. Instead, the behavior ceased only when DOC, in its discretion, released her on furlough. Under these circumstances, the court concludes that it is reasonable to shift the burden to DOC to demonstrate that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203 (1968)). As the *Laidlaw* Court noted, this is a "heavy burden." *Id.* DOC's showing—the bare fact that Ms. Perez is now on furlough—falls well short;[4] compare, for example the showing that the *All Cycle* Court recognized as sufficient to win summary judgment. *See All Cycle*, 164 Vt. at 433. Thus, DOC has failed to meet its burden, and the court denies the motion to dismiss.

_____

Samuel Hoar, Jr.
Superior Court Judge

---

[4] The court notes that, at least if it is reading the docket disposition reports correctly, Ms. Perez will not reach her maximum release date until April 2023. Thus, as she points out in her opposition, there is a not inconsequential risk that at DOC's sole discretion, she may well find herself back at CRCF before this case can be concluded.