[34 NYS3d 409]

In the Matter of CAROL PUERTO, Respondent-Appellant, v ROB-
ERT DOAR, as Commissioner of the New York City Human
Resources Administration, et al., Appellants-Respondents.

First Department, June 9, 2016

APPEARANCES OF COUNSEL

*Zachary W. Carter, Corporation Counsel*, New York City (*Marta Ross* and *Edward F.X. Hart* of counsel), for municipal appellant-respondent.

*Eric T. Schneiderman, Attorney General*, New York City (*Valerie Figueredo* and *Cecelia C. Chang* of counsel), for state appellant-respondent.

*Legal Services NYC-Bronx*, Bronx (*Sienna Fontaine* of counsel), for respondent-appellant.

## OPINION OF THE COURT

Acosta, J.

At issue in this case is the validity of the notice of conciliation and the notice of decision that public assistance recipients receive informing them of their failure to participate in manda-

tory assessments and employability plans. The specific question is whether 18 NYCRR 385.11, and the above-mentioned notices approved by the New York State Office of Temporary and Disability Assistance (OTDA),[1] violate Social Services Law § 341 because the notices fail to state affirmatively that a valid reason for not attending a mandatory assessment is that on the scheduled date of the assessment the recipient was participating in an approved training program. The notices also do not offer recipients a chance to cure their noncompliance prospectively. For the reasons stated below, we hold that the notices comply with Social Services Law § 341 (1).

Public assistance programs in New York City, including the State's family assistance program (see Social Services Law §§ 2 [18], [19]; 348; 349), are administered by the New York City Human Resources Administration (HRA)[2] under OTDA's supervision. To receive public assistance under the family assistance program, nonexempt recipients "must be engaged in work" (Social Services Law § 335-b [5] [a]; 18 NYCRR 385.2 [f]). To carry out this mandate, local social services districts assign recipients to work activities (Social Services Law § 336; 18 NYCRR 385.9 [a]). HRA's employment plan defines "engaged in work" as "[c]ompliance with assessment, employment planning, all activities included in the individual's Employment/ Self-Sufficiency plan including . . . any of the work activities listed [elsewhere in the HRA employment plan]." Recipients who willfully and without good cause[3] fail to participate in assessments and employability plans are subject to reductions in their public assistance benefits.[4]

Petitioner, a recipient of public assistance benefits from HRA, was participating in a city-approved training program in 2010. She was sent a notice, dated November 26, 2010, to attend a "Mandatory Training Assessment Group [TAG] Appointment" on December 9, 2010, at 9:00 a.m., to "discuss [her] employment goals," but she never received the notice, because it was not addressed properly. Instead, on December 9, petitioner went to work, as HRA required her to do under the training program.

Apparently, HRA, by way of a computerized system known as "autoposting," automatically posted an infraction. Petitioner

---

1. The state respondent is Elizabeth Berlin, as Executive Deputy Commissioner of OTDA.
2. The municipal respondent is Robert Doar, as Commissioner of HRA.
3. Social Services Law § 341 (1) (a); 18 NYCRR 385.11 (a) (4) (i).
4. Social Services Law §§ 335 (3); 342; 18 NYCRR 385.6 (a); 385.12.

alleges that the infraction automatically triggered the issuance of a "Conciliation Notification."[5] On December 26, 2010, HRA mailed petitioner the conciliation notification instructing her to appear at its office on January 8, 2011, at 9:00 a.m., "to explain to a Conciliation Worker why [she] did not report or cooperate" with work requirements. The conciliation notification informed petitioner that she should be prepared to show "good cause" for having failed to "comply[ ] with a work requirement." It provided "examples of good reasons" for failing to comply, including but "not limited to" the following circumstances: that her child was "sick on the day of the work activity," that she "had a household emergency," that she did not have child care for a child under 13, and that she was "unable to participate due to a domestic violence situation." The notification did not give, as an example of good cause, the fact that she was participating in an HRA-mandated training program. HRA again failed to address the notice to petitioner's address. Consequently, petitioner did not appear for the conciliation interview on January 8, 2011.

On January 12, 2011, HRA mailed petitioner a notice of decision (NOD). The NOD stated that the agency had determined that petitioner "willfully did not complete" "employment requirement(s)," by failing to attend the interview on December 9, 2010, and that petitioner had failed to respond to the conciliation notification. The NOD stated that petitioner's public assistance benefits would be reduced from $753 to $502 per month, effective January 23, 2011. The NOD advised petitioner that, if she disagreed with HRA's decision, she could request a "conference," or "informal meeting," with HRA, or a "State Fair Hearing," at which she could be represented by counsel. This time HRA addressed the NOD properly.

On February 4, 2011, petitioner requested a fair hearing, which was held on March 11, 2011, before an OTDA hearing officer. Petitioner appeared pro se. Petitioner testified that she never received the TAG interview letter, and that, had she received the letter, she would have informed HRA that she had to go to her internship on the scheduled date of December 9, 2010.

By decision dated April 19, 2011, OTDA upheld HRA's decision, finding that HRA had correctly determined that petitioner

---

5. According to OTDA, the conciliation notice used in this case was created by HRA and approved by OTDA.

"willfully and without good cause failed or refused to comply with employment requirements." In particular, OTDA found that, although petitioner "contended at the hearing that [she] did not comply because she is already engaged in approved Agency activity, [her] testimony is not credible because [her] overall testimony was not persuasive in light of the Agency evidence provided." OTDA held that petitioner's "failure to comply must be deemed willful in that [she] was fully aware of the appointment in issue but did not attend without providing good cause for failure to do so." OTDA did not address petitioner's contention that she did not receive the TAG interview notice or conciliation notification because those documents were mailed to an incomplete address, i.e., an address that did not include her apartment number.

The conciliation notification and NOD were sent pursuant to the statutory mandate of Social Services Law § 341. Entitled "Conciliation; refusal to participate," Social Services Law § 341 (1) provides:

> "(a) Consistent with federal law and regulations and this title, if a participant has failed or refused to comply with the requirements of this title, the social services district shall issue a notice in plain language indicating that such failure or refusal has taken place and of the right of such participant to conciliation to resolve the reasons for such failure or refusal to avoid a pro-rata reduction in public assistance benefits for a period of time set forth in [Social Services Law § 342]. *The notice shall indicate the specific instance or instances of willful refusal or failure to comply without good cause with the requirements of this title and the necessary actions that must be taken to avoid a pro-rata reduction in public assistance benefits*. The notice shall indicate that the participant has seven days to request conciliation with the district regarding such failure or refusal in the case of a safety net participant and ten days in the case of a family assistance participant. *The notice shall also include an explanation in plain language of what would constitute good cause for non-compliance and examples of acceptable forms of evidence that may warrant an exemption from work activities, including evidence of domestic violence, and physical or*

*mental health limitations that may be provided at the conciliation conference to demonstrate such good cause for failure to comply with the requirements of this title.* If the participant does not contact the district within the specified number of days, the district shall issue ten days notice of intent to discontinue or reduce assistance, pursuant to regulations of the department. Such notice shall also include a statement of the participant's right to a fair hearing relating to such discontinuance or reduction. If such participant contacts the district within seven days in the case of a safety net participant or within ten days in the case of a family assistance participant, it will be the responsibility of the participant to give reasons for such failure or refusal.

"(b) Unless the district determines as a result of such conciliation process that such failure or refusal was willful and was without good cause, no further action shall be taken. If the district determines that such failure or refusal was willful and without good cause, the district shall notify such participant in writing, in plain language and in a manner distinct from any previous notice, by issuing ten days notice of its intent to discontinue or reduce assistance. *Such notice shall include the reasons for such determination, the specific instance or instances of willful refusal or failure to comply without good cause with the requirements of this title, the necessary actions that must be taken to avoid a pro-rata reduction in public assistance benefits, and the right to a fair hearing relating to such discontinuance or reduction.* Unless extended by mutual agreement of the participant and the district, conciliation shall terminate and a determination shall be made within fourteen days of the date a request for conciliation is made in the case of a safety net participant or within thirty days of the conciliation notice in the case of a family assistance participant" (emphasis added).

The notice of conciliation incorporates the requirements set forth in Social Services Law § 341 (1) (a) (*see* 18 NYCRR 385.11). As relevant on this appeal, the notice informs the recipient of what constitutes good cause for failure to complete

a work requirement (Social Services Law § 341 [1] [a]; 18 NYCRR 385.12 [c] [1]). Examples of good cause for failing to comply with a work requirement include, but are not limited to, "circumstances beyond the individual's control," such as illness, lack of child care, family emergency, and domestic violence (18 NYCRR 385.12 [c] [1]).

The notice of decision likewise tracks the requirements set forth in Social Services Law § 341. Specifically, it informs the recipient that public assistance benefits are being temporarily reduced or terminated (Social Services Law § 341 [1] [b]; 18 NYCRR 385.11 [a] [3], [4] [i]). It identifies the specific instance of noncompliance, and advises the recipient of "the necessary actions that must be taken to avoid a pro-rata reduction in public assistance benefits" (Social Services Law § 341 [1] [b]; 18 NYCRR 385.11 [a] [2]). It also explains the reasons for the district's determination and informs the recipient of her right to request a fair hearing before her benefits can be discontinued or reduced (Social Services Law § 341 [1] [b]; 18 NYCRR 385.11 [a] [3]; see also 18 NYCRR 385.12 [a] [2] [iii] [d]). Unlike the conciliation notice, however, the notice of decision is not required to provide examples of good cause for the missed work activity (see Social Services Law § 341 [1] [b]).

Petitioner commenced this hybrid CPLR article 78 proceeding and declaratory judgment action in Supreme Court, New York County, seeking, among other things, the reversal of the OTDA determination and HRA's reduction of her benefits; a declaration that the conciliation notification and NOD violate Social Services Law § 341 by failing to inform participants of "the necessary actions that must be taken to avoid a pro-rata reduction in public assistance benefits"; and an injunction barring OTDA and HRA from sanctioning public assistance recipients until the conciliation notification and NOD are amended to conform with Social Services Law § 341.

After the petition was filed, HRA investigated the TAG notice and conciliation notification, and determined that they omitted petitioner's apartment number and therefore did not contain her complete address. HRA accordingly withdrew its determination, and OTDA correspondingly vacated its determination. HRA deleted the employment sanction from petitioner's case record, restored her full public assistance benefits, and paid her $2,008 in retroactive benefits covering the period of February 4 through October 3, 2011. HRA also updated its records to ensure that all future notices sent to petitioner would include her full address.

OTDA served an answer in which it argued that the agencies' remedial actions rendered petitioner's claims moot. OTDA also argued that the conciliation notification and NOD complied with Social Services Law § 341 and 18 NYCRR 385.11. OTDA further contended that petitioner's challenges to the conciliation notification and NOD were dehors the administrative record, since she never raised them at the agency level or administrative hearing.

By notice dated April 6, 2012, in lieu of answer, HRA cross-moved to dismiss the petition, arguing, among other things, that its corrective actions had rendered petitioner's claims moot.

Supreme Court denied the petition in part and granted it in part (42 Misc 3d 563 [2013]). The court granted HRA's motion to dismiss the petition "only to the extent of dismissing the claim that [HRA's] conciliation and conference procedures violate Social Services Law § 341 (1) by not allowing a public assistance recipient to participate in work activities prospectively to avoid a reduction in assistance after a failure or refusal to participate" (*id.* at 578-579). The court similarly dismissed petitioner's claim that OTDA "violated Social Services Law § 341 (1) by approving conciliation and conference procedures that do not allow a recipient to participate in work activities prospectively to avoid a reduction in assistance after a failure or refusal to participate" (*id.* at 579).

The court, however, granted the petition "to the following extent":

> "The court declares and adjudges that 18 NYCRR 385.11 (a) (2), insofar as it omits that a showing of compliance with assessments, employment planning, and assigned work activities is action a public assistance recipient may take to avoid a reduction in assistance, violates Social Services Law § 341 (1) (a). [OTDA] shall amend 18 NYCRR 385.11 (a) (2) to require that a conciliation notice notify a recipient of her right to show compliance with assessments, employment planning, and assigned work activities. The court declares and adjudges that, insofar as [HRA's] conciliation notification and notice of decision omit that a showing of compliance with all assessments, employment planning, and assigned work activities is action a public assistance recipient may take to avoid a reduction in

assistance, [OTDA] has approved notices that violate Social Services Law § 341 (1). [OTDA] shall disapprove conciliation notices and notices of decision that fail to notify a recipient of her right to show compliance with assessments, employment planning, and assigned work activities" (*id.* [citations omitted]).[6]

In addition, the court opined that HRA's use of "autoposting"—the use of a computerized system that "automatically imposes a sanction . . . due to a failure to attend an employment or work activity appointment"—likely violates 18 NYCRR 358-4.1 (a), which calls for "review" of reductions of public assistance benefits "to determine whether the action is correct based upon available evidence" (*id.* at 569). Nonetheless, the court declined to rule on this issue before HRA served an answer and discovery with respect to its autoposting procedures.

Initially, this Court must decide whether this matter is moot. Generally, courts may not pass on moot questions (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707 [1980]). However, "[w]here . . . a judicial determination carries immediate, practical consequences for the parties, the controversy is not moot" (*Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 812 [2003], *cert denied* 540 US 1017 [2003]; *see also Hearst Corp.*, 50 NY2d at 714 ["an appeal will be considered moot unless the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment"]). As the United States Supreme Court noted in *United States v W. T. Grant Co.* (345 US 629, 632 [1953]):

> "Both sides agree to the abstract proposition that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case

---

**6.** Supreme Court ruled on this issue with respect to OTDA because it answered and did not seek disclosure. The court noted that it was inconceivable how further development of the record would show whether "18 NYCRR 385.11 (a) (2), in 2010 or since, requir[ed] that a conciliation notice notify a recipient of her right to show compliance with assessments, employment planning, and assigned work activities, to avoid a reduction in assistance" (42 Misc 3d at 572). Supreme Court, therefore, treated the petition regarding 18 NYCRR 385.11 (a) (2) as a motion for summary judgment (CPLR 409 [b]; *Matter of Hotel 71 Mezz Lender, LLC, v Rosenblatt*, 64 AD3d 431, 432 [1st Dept 2009]).

moot. A controversy may remain to be settled in such circumstances, *e.g.*, a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion. For to say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right. The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement" (citations and footnote omitted).

Moreover, a court may adjudicate an otherwise moot matter that "satisfies the three critical conditions to the mootness exception in that it presents an issue that (1) is likely to recur, (2) will typically evade review and (3) is substantial and novel" (*Matter of Chenier v Richard W.*, 82 NY2d 830, 832 [1993]). Where these requirements are met, a court may "reach the moot issue even though its decision has no practical effect on the parties" (*Saratoga County Chamber of Commerce*, 100 NY2d at 811).

■ Here, petitioner's claims meet the standard for the mootness exception. There is a likelihood of repetition of the controversy, since petitioner continues to be a recipient of public assistance and continues to be subject to the public assistance sanction process, including conciliation and autoposting, which led to HRA's erroneous determination sanctioning her. As petitioner notes, in New York City alone, from July 2012 to June 2013, on average there were 15,269 public assistance recipients a month in sanction status for an employment-related infraction.[7] The practices and procedures of HRA in regard to the employment requirements and process, and their lawfulness, present a controversy that without a doubt is likely to recur both with respect to petitioner and with respect to thousands like her. Indeed, the dissent acknowledges that the "issues of the sufficiency of the contents of the notices that were sent to petitioner, and the propriety of generating those notices by means of 'autoposting,' may be likely to recur," and that the issues are substantial and novel. The dissent

**7.** 2013 Statistical Report on the Operations of New York State Public Assistance Programs, Table 23 at 46, available at http://otda.ny.gov/resources/legislative-report/2013-Legislative-Report.pdf, cached at http://www.nycourts.gov/reporter/webdocs/2013-Legislative-Report.pdf.

nonetheless disagrees with our position that these issues will typically evade review. Contrary to the dissent, however, the issues presented by this case are rarely reviewed by the courts, because pro se litigants at the administrative hearing level are not equipped to raise complex legal issues at their hearings. If, in those few cases in which public assistance recipients retain counsel to bring these issues before a court, HRA and OTDA can moot them out by vacating a fair hearing decision and restoring some lost benefits, then these issues will truly always evade review.

That HRA had a "good faith" interest in settling petitioner's claim when it determined that the notices were sent to the wrong address is beside the point. Petitioner's case was settled only after Legal Services filed an article 78 proceeding; petitioner actually lost at her fair hearing even though she explained that the notices were sent to the wrong address. Nor does it matter whether respondents have a valid reason for settling or whether they do so to avoid review. The fact remains that the issue will typically evade review. The dissent makes much of the fact that petitioner noted that there were five pending cases that raise similar issues dating back to 2010. Six years later, and with hundreds of thousands of public assistance recipients in sanction status for an employment-related infraction, however, the issues have not been decided. In fact, four of those five cases settled. The fifth case, *Smith v Berlin* (index No. 400903/10 [Sup Ct, NY County]), is still pending. However petitioner notes that, although she alleges similar deficiencies in the notices as in the *Smith* case, she also alleges that HRA's procedures are deficient because there is no opportunity to avoid sanction either during conciliation or after the notice of decision has been issued, a claim that the petitioner in *Smith* does not raise. *Smith* also does not challenge HRA's use of autoposting.

Last, it is unfair to dismiss the petition at this juncture when the issue as to whether autoposting violates 18 NYCRR 358-4.1 is still pending.

Turning to the merits, we find that the notices at issue do not violate the applicable regulatory scheme. In reviewing these notices, we are mindful that "[t]he standard for judicial review of an administrative regulation is whether the regulation has a rational basis and is not unreasonable, arbitrary or capricious" (*Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health*, 85 NY2d 326, 331 [1995]),

or contrary to the statute under which it was promulgated (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d 249, 254 [2004]). The party challenging a regulation has the heavy burden of establishing that "it is so lacking in reason for its promulgation that it is essentially arbitrary" (*Matter of Marburg v Cole*, 286 NY 202, 212 [1941]; *Matter of Consolation Nursing Home*, 85 NY2d at 331-332).

■ Applying this standard, we hold that the court erred in finding that 18 NYCRR 385.11 (a) (2) violates Social Services Law § 341 (1) (a), insofar as it omits that a showing of compliance with assessments, employment planning, and assigned work activities is action that a public assistance recipient may take to avoid a reduction in assistance. The provision on which the court relied requires the agency to issue "a notice in plain language" indicating that the participant's "failure or refusal" to comply with work requirements has taken place, and "the right of such participant to conciliation to resolve the reasons for such failure or refusal" (Social Services Law § 341 [1] [a]).

The statute specifies that the notice "shall indicate the specific instance or instances of willful refusal or failure to comply without good cause with the requirements of this title *and the necessary actions that must be taken to avoid a pro-rata reduction in public assistance benefits*" (Social Services Law § 341 [1] [a] [emphasis added]). It is the italicized language that the court most particularly relied on in concluding that the statute requires the agency to advise a public assistance recipient that she may avoid sanction by showing that she did in fact comply with work requirements.

Section 341 (1) (b) similarly directs the agency, in the event conciliation is unsuccessful, to issue a notice of decision stating

> "the reasons for such determination, the specific instance or instances of willful refusal or failure to comply without good cause with the requirements of this title, the necessary actions that must be taken to avoid a pro-rata reduction in public assistance benefits, and the right to a fair hearing relating to such discontinuance or reduction."

But, as noted above, it does not require that the notice of decision give examples of good cause.

The regulation and notices closely track the statute, which focuses on how a recipient can demonstrate good cause for hav-

ing failed to comply with work requirements. In fact, every requirement set forth in Social Services Law § 341 is incorporated into the notices. The crux of Supreme Court's holding is that the regulation and notices do not satisfy a requirement that recipients be expressly told that they can avoid sanction by asserting compliance. The statute on its face, however, simply contains no such requirement. This is particularly true for the notice of decision, because Social Services Law § 341 (1) (b) does not require that the notice give examples of good cause. Under these circumstances, this Court cannot find that 18 NYCRR 385.11 and the notices were unreasonable or arbitrary.

■ Supreme Court correctly found, however, that Social Services Law § 341 (1) does not require the agency to give sanctioned public assistance recipients a chance to cure their noncompliance. Petitioner contends that the statute's requirement that notices state "the necessary actions that must be taken to avoid a pro-rata reduction" in benefits means that the agency must inform sanctioned recipients of the "actions" they can take to avoid losing benefits. The companion statute, Social Services Law § 342, sets forth a system of progressive periods of benefits reductions. Under this system, first offenders may end sanctions simply by complying with the work requirement. Moreover, repeat offenders must suffer reduced benefits for at least three months and thereafter until they comply (Social Services Law § 342 [2] [a]-[c]). This progressive scheme is referred to in section 341 itself, which directs the agency to send a sanctioned recipient "whose failure to comply has continued for three months or longer a written reminder of the option to end a sanction after the expiration of the applicable minimum sanction period by terminating the failure to comply" (Social Services Law § 341 [5] [a]).

In other words, viewed as a whole, the statutory regime of which section 341 (1) is a part provides for a system of tiered sanctions. The regime does indeed provide for opportunities to cure, particularly for first offenders. It also provides for minimum sanction periods for repeat offenders. Section 341 (1), however, does not grant all offenders an immediate right to cure noncompliance. Thus, the court correctly dismissed petitioner's claim that the conciliation procedures and conference procedures following a notice of decision violate Social Services Law § 341 (1) by not allowing a public assistance recipient to participate in work activities prospectively to avoid a reduction in assistance after a failure or refusal to participate.

■ Although we hold that the conciliation notices comport with the relevant regulatory scheme, we note that HRA's errors resulted at least in part from autoposting. We find it troubling that HRA took adverse action without any employee or officer reviewing petitioner's case record or investigating her case, particularly since 18 NYCRR 358-4.1 (a) provides that "[a] social services agency must *review* . . . actions to determine whether the action is correct based upon available evidence included in the applicant's or recipient's case record" (emphasis added). 18 NYCRR 358-4.1 (b), provides that only after that review of the case record, is HRA to send a NOD informing an applicant or recipient of the action to be taken: "Where it is determined that the intended action is correct after review, the social services agency must send to the applicant/recipient a notice."

Insofar as petitioner seeks declaratory and injunctive relief prohibiting HRA's use of autoposting, rather than the reversal pursuant to CPLR article 78 of HRA's decision to reduce her public assistance, which occurred as a consequence of the use of autoposting, HRA is entitled to answer before a final determination of this claim is made upon a motion for summary judgment or after an opportunity for disclosure and a trial (CPLR 3212 [f]; 7804 [f]; *Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County*, 63 NY2d 100, 103 [1984]; *Matter of Camacho v Kelly*, 57 AD3d 297, 298-299 [1st Dept 2008]).

Accordingly, the order of the Supreme Court, New York County (Lucy Billings, J.), entered on or about April 25, 2013, which, insofar as appealed from as limited by the briefs, granted the petition to annul a determination of the New York State Office of Temporary and Disability Assistance, dated April 19, 2011, upholding the decision of the New York City Human Resources Administration, dated January 12, 2011, which reduced petitioner's public assistance benefits on the ground that she missed a scheduled appointment, to the extent of declaring that 18 NYCRR 385.11 (a) (2) and certain notices issued thereunder violate Social Services Law § 341 (1) by failing to require that public assistance recipients be notified of their right to show compliance with required work activities, and granted HRA's motion to dismiss the petition to the extent of dismissing the claim that HRA's conciliation and conference procedures violate Social Services Law § 341 (1) by not allowing a public assistance recipient to avoid sanctions by curing

noncompliance with work activities, should be modified, on the law, to vacate the declaration that 18 NYCRR 385.11 (a) (2) and certain notices issued thereunder violate Social Services Law § 341 (1) by failing to require that public assistance recipients be notified of their right to show compliance with required work activities, and declare that 18 NYCRR 385.11 (a) (2) and the subject notices do not violate Social Services Law § 341 (1), and otherwise affirmed, without costs.

FRIEDMAN, J.P. (dissenting). While I do not disagree with the majority's discussion of the substantive issues raised on this appeal, I respectfully dissent from the disposition of the appeal on the ground that petitioner's claims for relief were already moot by the time the matter was submitted to Supreme Court for determination. Further, contrary to the majority's position, no exception to the mootness doctrine applies. Accordingly, we should reverse the order appealed from, grant the municipal respondent's cross motion to dismiss the petition as moot, and dismiss the proceeding.

The record shows, and petitioner does not dispute, that, promptly after this proceeding under CPLR article 78 was commenced in August 2011, the City investigated the matter and found that it had mailed the conciliation notification and subsequent notice of decision to an incomplete address, from which the number of petitioner's apartment had been omitted. The City accordingly determined that it had erred in finding, based on petitioner's failure to respond to these notices, that she had not complied with applicable work requirements. Pursuant to this determination, both the City and the State vacated the determinations adverse to petitioner, as reflected in the amended decision, dated October 12, 2011, that was issued by the State Office of Temporary and Disability Assistance.[1] The City followed up by deleting the employment sanction from petitioner's case record, restoring her full public assistance benefits, and paying her retroactive benefits for the period when her benefits had been reduced. The City also updated its records to ensure that future notices would be sent to petitioner's full address.

---

1.  The amended decision directed the City Human Resources Administration to "[w]ithdraw its Notice of Intent [to sanction petitioner]," to "[t]ake no further action on its Notice of Intent," and to "[r]estore any Public Assistance lost by [petitioner] as a result of such Notice, retroactive to the date of the Agency's action." The amended decision further directed the City to comply with these directives "immediately."

As the City argued in support of its cross motion to dismiss, long before the matter was submitted to the court for adjudication on April 19, 2012, and before the court issued its decision and order on March 27, 2013, the foregoing actions by respondents "mooted the petition as to both the injunctive and declaratory relief sought" (*Matter of Santiago v Berlin,* 111 AD3d 487, 487 [1st Dept 2013]). The mere possibility that petitioner could be subjected in the future to notices with improper contents, generated by insufficient internal procedures, as alleged in the petition, is speculative and does not suffice to constitute a live controversy between this particular petitioner and respondents. Petitioner has been made whole, there are no other charges pending against her, and there may never again be any charges against her. Hence, there is no live controversy between petitioner and respondents, and this Court's determination does not "carr[y] immediate, practical consequences for the parties" (*Saratoga County Chamber of Commerce v Pataki,* 100 NY2d 801, 812 [2003], *cert denied* 540 US 1017 [2003]). Further, petitioner, no longer having any personal stake in the outcome of the legal dispute raised by the petition, cannot manufacture an actual controversy by asserting a claim for declaratory relief (*see Long Is. Light. Co. v Allianz Underwriters Ins. Co.,* 35 AD3d 253 [1st Dept 2006], *appeal dismissed* 9 NY3d 1003 [2007]).

I respectfully disagree with the majority's conclusion that Supreme Court properly considered this matter under the exception to the mootness doctrine for a matter that "presents an issue that (1) is likely to recur, (2) will typically evade review and (3) is substantial and novel" (*Matter of Chenier v Richard W.,* 82 NY2d 830, 832 [1993]). While the issues of the sufficiency of the contents of the notices that were sent to petitioner, and the propriety of generating those notices by means of "autoposting," may be likely to recur, there is no reason to expect that these issues, substantial and novel though they may be, will typically evade review. The gravamen of petitioner's argument to the contrary, which the majority accepts, is that respondents will systematically "moot . . . out [claims presenting these issues] by vacating a fair hearing [determination] and restoring some lost benefits" in each case in which litigation is commenced. However, the record contains no evidence that respondents have been engaging in a practice of deliberately withdrawing sanctions determinations for the purpose of perpetually evading judicial review of the general practices challenged in this proceeding.

· Further, the record establishes that, in this particular case, respondents had a legitimate reason, unconnected to petitioner's arguments concerning the sufficiency of the contents of the notices and the propriety of autoposting, for settling her individual claim. Specifically, petitioner avers that the notices in question did not reach her, leading ultimately to the now-withdrawn adverse determination, because the municipal respondent admittedly sent out those notices with an incomplete address. Thus, respondents had a good faith reason for settling petitioner's particular claim without conceding the merits of her arguments that are the asserted basis for the application of the exception to the mootness doctrine. There is no basis in the record for inferring that respondents' reversal of the sanctions against petitioner was motivated by a plan to evade judicial review of the general practices challenged by the petition.[2]

While petitioner and the majority point to the great number of city residents who receive public assistance benefits as an indication that the issues of the propriety of the general practices under challenge here are likely to recur, this only underscores the point that these issues are likely to reach this Court in other cases that, unlike this one, have not been mooted. I see no merit in petitioner's contention that public assistance recipients will typically be unable to retain counsel or otherwise challenge adverse sanction determinations. As petitioner herself reports, as of the date of her petition, there were at least five pending proceedings, dating back to 2010, in which the same issues were being litigated.[3] The important issues that petitioner has raised should be determined in a case

2. Respondents do not contend that a notice is valid even if it does not reach the intended recipient due to the sending agency's failure to address the notice accurately or completely. If either respondent were making that argument, I would agree that the exception to the mootness doctrine should be applied.

3. The majority asserts, based on information not contained in the record, that four of the five cases have been settled, and that the petitioner in the fifth case has not raised all of the issues raised by the instant petitioner. As to the cases that have settled, the majority does not describe the particular facts of those cases in sufficient detail to enable us to determine whether the respondents had a reason to settle those matters other than the desire to avoid review of the issues contested in this matter. If these issues are truly endemic to the system, petitioner's able counsel in this proceeding, or a similar legal services organization, should have no difficulty finding a case that can be prosecuted to final adjudication where there has been no settlement or, alternatively, the settlement is attributable to the respondents' desire to avoid judicial review of these issues. To reiterate, given the

brought by an individual who still has a personal stake in the determination of those issues at the time a court determines them. Since petitioner had no such stake at the time the order under review was rendered, that order should be reversed and the petition dismissed.

RENWICK and MOSKOWITZ, JJ., concur with ACOSTA, J.; FRIED-MAN, J.P., dissents in an opinion in which ANDRIAS, J., concurs.

Order, Supreme Court, New York County, entered on or about April 25, 2013, modified, on the law, to vacate the declaration that 18 NYCRR 385.11 (a) (2) and certain notices issued thereunder violate Social Services Law § 341 (1) by failing to require that public assistance recipients be notified of their right to show compliance with required work activities, and declare that 18 NYCRR 385.11 (a) (2) and the subject notices do not violate Social Services Law § 341 (1), and otherwise affirmed, without costs.

---

independent reasons respondents had for settling the instant matter, the record of this case does not demonstrate any desire on the part of respondents to avoid judicial review of the contested issues.